187 So.2d 847 (1966)
LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE, Defendant-Appellant,
v.
Addle M. HARVISON, Administratrix of the Estate of L.D. Harvison, Sr., Plaintiff-Appellee.
No. 43992.
Supreme Court of Mississippi.
June 13, 1966.
Heidelberg, Sutherland & McKenzie, Hattiesburg, for appellant.
Holmes & Dukes, Hattiesburg, for appellee.
PATTERSON, Justice.
The appellee, Addie M. Harvison, administratrix of the estate of L.D. Harvison, Sr., brought suit against the appellant, Life & Casualty Insurance Company of Tennessee in the Circuit Court of Forrest County, alleging that L.D. Harvison, Sr. had entered into a $15,000 contract of life insurance with the appellant, and that the company refused payment thereunder upon Harvison's death. The case was tried before the circuit court without jury. From an adverse judgment the defendant insurance company appeals.
The record reveals these facts. In December 1962 L.D. Harvison, Sr. retired from the Hattiesburg Police Department after 20 years of service. Thereafter he worked for a short while as a debit collector for the National Life Insurance Company and as a soliciting agent for the Reserve Life Insurance Company. Harvison desired coverage, mortgage cancellation insurance, on a home he had purchased. On December 27, 1963, two representatives of the appellant, Emery Anderson, a soliciting agent, and B.E. Lord, a staff manager of the defendant insurance company, met with Harvison at his home to discuss insurance coverage with him. As a result thereof Harvison made application for a policy from the defendant in the amount of $15,000, as Anderson stated, "I wrote an application on Mr. Harvison on that day.", and "It was fifteen thousand dollars for the purpose of eliminating a mortgage in case of his death." Part A of the application, with the exception of questions 15 through 25, was completed by the agent. *848 Questions 15 through 25, which relate to the health and medical history of the applicant, were not filled in as, according to the terms of the application, they were not to be completed if the applicant was to be medically examined. Part A is as follows:

Part B of the application is entitled "Medical Examination" and it is denoted "Continuation of Application." Part C of the application indicates that it is to be filled out by a duly appointed medical examiner. Neither Part B nor Part C of the application was completed due to circumstances hereinafter related.
After completion of Part A of the application, as mentioned above, Anderson requested the first monthly premium in the amount of $17.67 from Harvison. He was instructed by the latter to go to Mrs. Harvison, the wife of the applicant, and that she would pay the amount requested. Pursuant to this direction, the agent contacted Mrs. Harvison and received from her a check in payment of the first monthly premium and she was receipted therefor. At this time the agent assured Mrs. Harvison, *849 according to her testimony, as to the effective date of coverage as follows: "When he handed me the receipt I asked him if it meant that the policy was in effect from that day of December 27th, and he said yes, the policy would be in effect from the date the receipt was given and the check that I had given him was a binder to the company, unless my husband was rejected." The check was forwarded to the district office of the defendant in Gulfport and deposited to its account.
Anderson and Lord considered Harvison insurable though both were aware that he had an asthmatic condition. However, each of the parties recognized the necessity of and contemplated that the applicant would undergo a medical examination and that Parts B and C of the application would be completed thereafter. To accomplish the medical examination Harvison was requested to select a doctor by whom he might be examined. He designated Dr. Z.B. Graves of Hattiesburg, and on December 31, 1963, Anderson left Parts B and C of the application in the doctor's office for his completion after the examination.
Harvison died January 9, 1964, never having taken the medical examination. After his death, Anderson and Lord went to the home of Mrs. Harvison, the beneficiary designated in Part A of the application, and tendered her a check in refund of the amount of the first premium. This check has not been cashed by Mrs. Harvison though she acknowledged its receipt.
Plaintiff made demand upon the defendant for benefits under the terms of the alleged contract. The defendant's refusal thereof precipitated this lawsuit. From a judgment against it the insurance company appeals.
The decisive issue before the Court is whether the signed application, the payment of the first premium, and the defendant's conditional receipt therefor create by operation of law a policy of interim insurance on the life of L.D. Harvison, Sr.
The appellant makes other assignments of error, but since we hold that the court erred in refusing to sustain a motion for a directed verdict for the defendant, it is not necessary that we pass thereon.
The thrust of the appellee's argument for affirmance on this appeal is that the conditional receipt of the appellant created a contract of interim insurance by operation of law; an appellate court of the state of Tennessee, the state of the defendant's domicile, has construed the language of the application and receipt identical to the application and receipt here, as being ambiguous and it should be so construed here; and considerations of public policy make it fundamentally unfair and inequitable for the insurer to collect a premium and not provide coverage during the period reserved to act on the application. Plaintiff cites persuasive authorities, hereinafter discussed, to support her theory of the case. The courts in these cases have stated: (1) That the purpose of binding receipts is to provide an inducement for the applicant to pay the first premium in advance; that such payment is to the advantage of the insurance company and that it would be unconscionable to permit the insurance company to escape the obligations which an ordinary lay applicant would reasonably believe had been undertaken by the insurer. (2) That much of the difficulty in this type of suit must be laid at the dorstep of the life insurance industry due to its use of language obscure to laymen and in tolerating agency practices calculated to lead the layman to believe that he has coverage beyond that which may be called for by a literal reading of the application and receipt. (3) Conflicting or ambiguous recitals as to the time when the insurance becomes effective are resolved against the insurance company.
This reasoning is most persuasive and doubtless has much merit. However, these theories must be ultimately resolved by the particular facts before this Court in the light of an analysis of the facts which led *850 the varied courts to such announced principles.
In Starr v. Mutual Life Ins. Co. of New York, 41 Wash. 228, 83 P. 116 (1905), the applicant paid the first premium and was examined by a physician. On the afternoon of December 8, 1903, the application was approved and the policy was issued and sent to the Seattle office for delivery to the insured. The applicant died on the morning of December 8, 1903. The court held that the receipt, given to the applicant upon the completion of the medical examination, must be construed in conjunction with the application; that there was a conflict between the receipt and the application, and that the receipt was controlling. The receipt was dated November 30, 1903, and contained this language: "Policy to take effect from date." The effect of the receipt was deemed to constitute a present contract of insurance, subject to be continued or terminated by the approval or rejection of the application.
In Stonsz v. Equitable Life Assur. Soc., 324 Pa. 97, 187 A. 403, 107 A.L.R. 178 (1936), the applicant overpaid the amount estimated as the first premium and was examined by a physician on June 28, 1927. The policy was issued on July 6, 1927, at a premium less than that paid by the applicant. Applicant had become disabled from an injury sustained on June 30, 1927. The court construed the receipt to be binding since it found that if there was a rejection of the policy by the company, it was a rejection due to the estimated premium rate and not of the appellee as a bad insurance risk. It thus held the effective date of the policy to be June 28, 1927.
In Gaunt v. John Hancock Mutual Life Ins. Co., 160 F.2d 599 (2d Cir.1947) cert. denied, 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858 (1947), the applicant had paid the first premium, had taken the medical examination, and was determined to be an insurable risk for the plan and amount applied for in accordance with the rules of the insurance company. The question before the court was whether the insurance was effective on the "Date of Part B" or the "Date of Issue of Policy,", neither of which had been checked by the applicant. The court pointed out in holding for the plaintiff the following:
`* * * the application was not to be submitted to underwriters; it was to go to persons utterly unacquainted with the niceties of life insurance, who would read it colloquially. It is the understanding of such persons that counts; and not one in a hundred would suppose that he would be covered * * * only as of the date of approval. * * *'
And further, from the same opinion:
(F)or the ordinary applicant who has paid his first premium and has successfully passed his physical examination, would not by the remotest chance understand the clause as leaving him uncovered until the insurer at its leisure approved the risk; he would assume that he was getting immediate coverage for his money." (160 F.2d at 602) (Emphasis added.)
In Simpson v. Prudential Ins. Co. of America, 227 Md. 393, 177 A.2d 417 (1962), the applicant paid the first premium, was examined, and the results of the medical examination were apparently satisfactory in all respects except one, a "trace" of sugar in the urine. A portion of the urine examined was sent to the home office of the company as was required, in such case, by the application. The applicant was killed in an accident while action on the application was pending. The court held that the "satisfaction type of receipt" required that the applicant meet an objective standard of insurability, and reversed the case for a new trial since the lower court's directed verdict for the insurance company did not pass upon the sufficiency of the evidence to warrant the submission of the case to the jury on the question of the applicant's insurability.
In Ransom v. Penn Mutual Life Ins. Co., 43 Cal.2d 420, 274 P.2d 633 (1954), the applicant *851 paid the first premium in full, and was examined by a doctor selected by the insurance company. This doctor found nothing wrong with his physical condition, but the insurance company called for a further medical examination after receiving a report from Dr. Long, who had previously treated the applicant. Before this could be arranged, the applicant Ransom was killed in an automobile accident. The jury found that the insurance company had refused to perform a contract. The court indicated that the language in the application did no more than to produce an ambiguity which would be resolved against the insurance company, stating: "We are of the view that a contract of insurance arose upon the defendant's receipt of the completed application and the first premium payment." (274 P.2d at 635). (Emphasis added.) The court further stated: "As we have seen, however, a contract for the insurance coverage described in the application came into existence upon receipt of the application and the premium payment after Ransom had been examined by defendant's doctor. The contract was not terminated by the request for further medical examination." (274 P.2d at 636) (Emphasis added.)
In Metropolitan Life Ins. Co. v. Grant, 268 F.2d 307 (9th Cir.1959), the applicant paid the amount of the first premium with Part A of the application, and was advised that he would need a medical examination as covered by Part B of the application. An appointment was made for the examination, but the applicant died as a result of an accident before he could be examined. The Ninth Circuit Court of Appeals, following the California rules of construction in Ransom supra, construed the language of the application as ambiguous and concluded that the Supreme Court of California would reach the conclusion that interim insurance was in force and effect from the time of the receipt by the insurance company's agent of the application and check.
In Wood v. Metropolitan Life Ins. Co., 193 F. Supp. 371 (N.D. Cal. 1961), affirmed 302 F.2d 802 (9th Cir.1962), the applicant, who had been previously declined as a risk by another insurance company, paid the full first premium with his application and took the requested medical examination. He died from a heart attack on the day of the medical examination, and it appears to be conceded that the applicant was not insurable. The Court concluded that under California law, the insurability of the applicant at the time of application is irrelevant, and that the language of the application binds the insurer until the application is rejected.
In Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 208 A.2d 638 (1965), the applicant paid his first premium with the application and was medically examined. The applicant died pending approval of the application by the company and it declined approval after learning of his death. The Supreme Court of New Jersey accepted the trial judge's ruling that the conditional receipt would not be unambiguous to an average layman for whom it was intended and that parol testimony as an interpretative aid was proper, and indicated that when confronted with the form of the receipt, recognition of interim insurance pending the company's approval or disapproval would be the just and equitable course. The court construed Ransom supra to hold that there was interim insurance without regard to whether or not the applicant was insurable, and fully approved of the principle expressed therein.
In Liberty National Life Ins. Co. v. Hamilton, 237 F.2d 235 (6th Cir.1956), the applicant paid his first premium, was medically examined and no abnormalities were disclosed. The company directed an inquiry to a doctor who had previously treated the applicant. The applicant died of a heart attack before the application was approved. A unique type of binder which provided that the company "shall have sixty days from the date of the receipt within which to consider and act upon the application and that if within such period a policy has not been received * * * the application shall be deemed to have been declined by *852 the company." The court held that medical evidence as to the applicant's good health at the time of his medical examination was a question of fact for the jury, and noted that the question of whether the medical examination had been completed so as to make the insurance coverage effective on that date was also an issue for the jury.
In Life & Casualty Ins. Co. of Tennessee v. Vertrees, 44 Tenn. App. 672, 318 S.W.2d 559 (1958), (the same defendant company as here, and the identical application and receipt as here), the applicant paid the first premium with his application for a plan and amount which ordinarily would not require a medical examination. The insurance company decided that a medical examination should be required, and requested one by letter. On the same day that the letter was written the applicant was accidentally killed in an automobile accident. The receipt provided that if the risk was acceptable, etc., "then the insurance applied for shall be in force as of the date of Part A of the application if no medical examination is required, or as of the date of Part B of the application if a medical examination is required * * *." Proof was offered at the trial to show that the applicant was in good health and that he would have been an insurable risk at the time of the application and at the time of his death. The court stated that the decision of the company to require a medical examination did not change the "A" application to a "B" application, and concluded that the application and receipt were ambiguous, though no specific ambiguity was designated, and affirmed the lower court's judgment for the plaintiff.
We note from a study of this case that the application and receipt were determined to be ambiguous as to the effective date of insurance due to the fact that the original application required no medical examination and contemplated the effective date as of the date of Part A of the application, and that the ambiguity arose by the action of the defendant company's attempt to change the effective date to the date of Part B of the application by subsequently requesting a medical examination. The attempted subsequent transition from one form of application to another pending the consideration thereof was a contingency not clearly provided for by the receipt and application as construed by the Tennessee court. Accordingly the court construed the ambiguity against the company.
From the above cases we determine that the Ninth Federal Circuit Court of Appeals construes Califorina law to require coverage, following first premium payment, until the application is rejected during the lifetime of the insured regardless of whether the applicant has completed the application or is an insurable risk, and apparently, the New Jersey courts approve this approach to the problem.
Other courts, including a majority of those cited above, in determining the effective date of interim insurance, have not disregarded the insurability of the applicant at the date of the application if no medical examination is required, or the requirement of a medical examination if one is necessary to the completion of the application.
In the instant case the applicant was a former insurance agent who had recently represented one or the other of two companies for approximately one year and was not utterly unfamiliar with some of the technicalities of insurance contracts. It is not disputed that he and the agents of the company contemplated that a medical examination was required due to his age, the plan, and amount of insurance applied for. The medical questions on Part A of the application were marked through and were not filled in, and Part B is a continuation of the application and "medical examination." An appointment had been made for a medical examination by a doctor of the applicant's selection, but the examination was not taken and therefore, Part B *853 was never completed. There was no attempt to depart from Part B by the parties in this suit; there was an attempted deviation from Part A to Part B in Vertrees supra. This attempted deviation was significant in that it left in doubt the effective date of insurance coverage and distinguishes Vertrees from this case. We conclude, therefore, that it is not controlling here.
In Jacobs v. New York Life Ins. Co., 71 Miss. 658, 662, 15 So. 639, (1893), we held:
There is no escape from the plain stipulation of the contract "that, if said application is not approved and accepted, said company shall incur no liability thereunder," and the fact that said application was not approved and accepted, but the applicant died while the company was considering the application. It had incurred no liability, and cannot be held bound as if it had.
Consistent therewith there is no liability on the part of the defendant here, as the application states:
(I)n which case such policy shall take effect on actual delivery of the policy to the applicant, EXCEPT THAT if the applicant pays in cash to the Company on the date of Part A of this application, or on the date of Part B of the application if a medical examination is required, an amount equal to the full first premium on the policy applied for, and if the Company shall be satisfied that on the date of Part A, or on the date of Part B if a medical examination is required, the applicant was a risk acceptable to it under its rules, for the plan and amount of insurance herein applied for at the rate of premium declared paid, then the insurance applied for shall be in force as of the date of Part A of this application if no medical examination is required, or as of the date of Part B of the application if a medical examination is required. * * And the receipt states:
If this sum is equal to the full first premium on the policy applied for, then if the Company be satisfied that on the date of Part A of the application, or on the date of Part B of the application if a medical examination is required, that the risk was acceptable to the Company under its rules, for the plan and amount of insurance applied for at the rate of premium declared paid, then the insurance applied for shall be in force as of the date of Part A of the application if no medical examination is required, or as of the date of Part B of the application if a medical examination is required. * * *
Considered together, the express language of these instruments is clear in its terms that there was no insurance coverage until the date of the completion of Part B, and this is not inconsistent with the statement of the agent to Mrs. Harvison, as his assurance to her of coverage as of the time of the first payment was conditioned upon the words, as related by her, "unless my husband was rejected." The contract measures the rights of the parties unless the contractual provisions are contrary to law or public policy. In accepting the receipt the insured clearly agreed that the defendant did not assume any liability until completion of Part B of the application. Cauthen v. National Bankers Life Ins. Co., 228 Miss. 411, 88 So.2d 103 (1956).
The language of the contract being clear, we cannot write into it terms not contemplated by the parties even though the defendant accepted the first premium payment without apparent benefit to the applicant. We hold, therefore, that the court erred in overruling the defendant's motion for a verdict at the conclusion of the plaintiff's testimony.
Reversed and rendered.
GILLESPIE, P.J., and JONES, BRADY, and INZER, JJ., concur.