PATTERSON, Chief Justice,
for the Court:
Tommie Lee Ford filed a bill of complaint against the Lamar Life Insurance Company, in the Chancery Court of Quitman County on December 28, 1981. She sought $100,000.00 in benefits pursuant to an alleged policy of insurance on the life of her husband, John B. Ford. Lamar Life interposed a general demurrer to the bill of complaint which was sustained and the complainant declining to plead further, the cause was dismissed with prejudice. Aggrieved, Mrs. Ford appeals to this Court.
She assigns as error the action of the trial court in sustaining appellee’s demurrer and dismissing her bill of complaint. Therefore, the only facts before the trial court or this Court are those which were well pled in the bill of complaint.
The appellant alleged that W.D. Gooch, an agent of Lamar Life Insurance Company, contacted John B. Ford, her husband, with reference to a $100,000 life insurance policy. Thereafter, May 18, 1981, Ford completed one of the appellee’s applications wherein Tommie Lee Ford, the complainant, was named the primary beneficiary. This application and a check for $2,512.00 which had been received from John B. Ford as the first annual premium payment was forwarded to the home company. At the time the application was completed and signed by Ford and the payment received by Gooch, Ford was issued a conditional receipt. In addition Lamar Life required a medical examination of the applicant and such was conducted by Dr. M.B. Lynch on May 21, 1981.
On June 2, 1981, John B. Ford, the applicant, was killed in an automobile accident. At the time of his- death no policy had been issued on his life by Lamar Life Insurance Company.
Thereafter the complainant filed her claim for benefits for which her husband had made application and paid the first annual premium. The claim was denied by Lamar Life and the amount paid for the premium, plus interest, was tendered to the appellant. This suit followed.
The complainant alleged the conditional receipt issued by Lamar Life to John B. Ford at the time he made application for a life insurance policy and paid the first annual insurance premium therefor was to be in full force and effect on the date of the medical examination, May 21, 1981. It is then alleged that a temporary contract of insurance was created when the defendant accepted the applicant’s premium payment and issued its conditional receipt. It is next asserted this temporary contract imposed liability upon the defendant for the sum of the insurance applied for until the defendant either accepted or rejected the application. There follows an averment that since the policy was not rejected during Ford’s life time, the temporary contract was in force and payable at the time of his death on June 2, 1981.
It is next alleged (or concluded) that had the defendant not intended there be insurance during the pendency of the application and medical examination, there would have been no reason for Ford to pay the premium as the company would receive it without assuming any obligation or risk and such would be inequitable and against public policy.
The issues presented embrace the language of the application signed by Ford and the conditional receipt issued by Lamar Life upon receipt of the application and the premium payment. The application in pertinent part follows:
(APPLICATION)
REPRESENTATION AND AGREEMENT: The undersigned represent and agree: 1. * -* * 2. No insurance shall be in force (except as may be provided in a Conditional Receipt bearing the same number as this application) until the policy has been delivered during the lifetime of persons proposed for insurance (subsequent to the payment of the full first premium), and at which time the Proposed Insured and Owner have no knowledge of any facts regarding any persons proposed for insurance which would re *1206 quire different answers to the questions contained in this application; whereupon, the policy will be effective as of its date of issue.
The language of the application appears to us to be without ambiguity. It states in no uncertain terms that no insurance shall be in force until the policy has been delivered during the lifetime of the persons proposed for insurance. Written into this statement in similar clear language is an exception that may come into being by the terms of the conditional receipt. This, of course, moves our attention to the conditional receipt because it has the potential of changing the effective date of the policy from the time of its delivery to a different time as provided by the conditional receipt.
It follows, in pertinent part:
(CONDITIONAL RECEIPT)
THIS RECEIPT DOES NOT PROVIDE ANY INSURANCE UNTIL AFTER ITS CONDITIONS ARE MET. NO AGENT HAS ANY AUTHORITY TO WAIVE OR ALTER THE PROVISIONS OF THIS RECEIPT.
!fc * ⅝ * * *
EFFECTIVE DATE IF INSURABLE AS APPLIED FOR
If the Company finds to its satisfaction that all persons proposed for insurance were insurable as standard risks on the effective date under the Company’s rules for insurance on the plan and for the amount applied for, the insurance shall be in effect on the latest of the following dates:
1. The date, if any, requested in the application.
2. The date of the last medical exam required by the Company.
3. The date of the application.
% ⅝ ⅜ %
NO LIABILITY WHERE THE COMPANY DECLINES — If the Company declines to issue the insurance as applied for, the Company shall have incurred no liability whatsoever because of the payment acknowledged by this receipt and this payment will be refunded.
⅝ ⅜ ⅝ * ⅜ ⅝
As mentioned, this cause was tried on a bill of complaint and demurrer. A perusal of the bill of complaint does not disclose any allegation as such that Ford was insurable as a standard risk on the effective date under the company’s rules for insurance. From this the defendant contends the conditional receipt was not effectual to displace the effective date, delivered during the life time of the person proposed for insurance, in the application. Conceding the accuracy of the defendant’s statement, we nevertheless find the argument to be unconvincing, because there is attached to the bill of complaint as Exhibit “D” the medical report of Dr. Lynch giving the result of his physical examination of Ford, the applicant. In it Dr. Lynch answered the following question, “Are you aware of anything about the health, habits, environment, or mode of life which might unfavorably affect the insurability of proposed insured?”, in the negative. In our opinion the doctor’s answer is the equivalent or approximates an allegation that Ford was insurable as a standard risk. Surely it gives no indication the risk was sub-standard thereby requiring, we suppose, a higher premium. We think also that the application, the premium payment, the conditional receipt plus the favorable report of the doctor would reasonably engender in a layman’s mind that he was then insurable as a standard risk and that the effective date of the policy was the date of the last medical examination as set forth in the conditional receipt.
In addition to the above Exhibit “D” discloses the results of a urinalysis test. In part, it reflects the following question and the doctor’s response, “Sugar? 3 + ”. It indicates also that a specimen had been mailed to a laboratory, obviously for further study. Again we think it highly improbable that the applicant would understand or appreciate the technical meaning of the elevated sugar count. Particularly would this be true if he were also unacq *1207 uainted, as he probably was, with the interplay between the elevated sugar count and, “the company’s rules for insurance on the plan and for the amount applied for,” as it effected his insurability.
We are of the opinion, that neither the application nor the conditional receipt either singularly or in combination is ambiguous, but we are convinced the unambiguous language of the conditional receipt creates a factual issue or issues not susceptible of resolution by a demurrer. The issue of whether the applicant was a standard insurable risk cannot be determined from the pleadings before us, the same as before the trial court, because the significance of the elevated sugar count is not related in the pleadings and neither are the company’s rules by which the issue must be resolved so that the effective date of the policy might be determined. We are of the opinion the trial court erred in sustaining the demurrer and not granting a trial on the merits.
In reaching the above conclusion we do no violence to Jacobs v. New York Life Ins. Co., 71 Miss. 658, 15 So. 639 (1894); Cauthen v. National Bankers Life Insurance Co., 228 Miss. 411, 88 So.2d 103 (1956); Life & Casualty Co. of Tenn. v. Harvison, 187 So.2d 847 (Miss.1966); or Franklin Life Insurance Company v. Hamilton, 335 So.2d 119 (Miss.1976). If anything, we uphold them, because the premise throughout is that the contract measures the rights of the parties. Here the contract, as expressed in the receipt, poses an equation, a complex of various factors, that, in our opinion, can only be resolved by a hearing on the merits.
REVERSED AND REMANDED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING,' HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.