**Robert GLADNEY, Plaintiff–Appellant,**

v.

**PAUL REVERE LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 89–4350
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 1, 1990.

Briggs Smith, Smith, Phillips & Mitchell, Batesville, Miss., for plaintiff-appellant.

Clifford K. Bailey, III, Wise, Carter, Child and Caraway, Jackson, Miss., for defendant-appellee.

Before HIGGINBOTHAM, DAVIS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The plaintiff in this case suffered the misfortune of becoming ill at a most inopportune time: during the application process for insurance coverage. Consequently, we are asked to decide whether an interim disability insurance policy was in effect prior to plaintiff's hospitalization for coronary by-pass surgery. Concluding that he failed, principally as a consequence of his own inaction, to satisfy conditions precedent for insurance coverage, we affirm.

## I.

The plaintiff, Robert Gladney, and his business partner sought disability protection from the defendant, Paul Revere Insurance Co. ("Paul Revere"). On November 17, 1986, Gladney submitted "Part 1" of an application for disability insurance to a Paul Revere insurance agent. Accompanying that application, Gladney enclosed a check for $3,100, representing the first semi-annual premium. In return, Gladney received Paul Revere's "Receipt and Conditional Insuring Agreement," purporting to provide interim coverage for sixty days if certain medical preconditions were satisfied.[1] Part 2 of the application, which needed to be executed within thirty days of Part 1, was a medical form to be completed by Gladney's physician.

The following month, Gladney was asked to complete a second application form, the first being too old to submit to Paul Revere's home office.[2] Gladney's second ap-

---

1. The conditional insuring agreement expressly declines interim coverage if either of the following questions is answered "yes," or left blank, or there is a material misrepresentation in the application or medical examination:

   *Has any person proposed for coverage:*
   a. Within the past two years been treated for heart trouble, stroke or cancer (other than of the skin), or had such treatment recommended?

   b. Within the past 90 days been admitted to a hospital or other medical facility, or been advised to be admitted?

   The plaintiff answered "no" to both of these questions in Part 1, but on Part 2's medical application form he answered affirmatively to a question reflecting that he once had chest pains, high blood pressure, or a disease of the heart.

2. The delay in submitting the application arose from Gladney's attempt to have the company accept a prior physical examination, completed

plication was nearly identical to the first, with the exception that the second was intentionally left undated. This was done to give Gladney, a busy man, time to complete the requisite physical examination without running the risk of having to complete a third application the following month.

Gladney agreed to notify the insurance agent upon completion of the medical examination, and he understood that further administrative tasks would have to be accomplished before his application package could be sent to the home office and a permanent policy issued. In January 1987, the agent contacted Gladney to inquire about the status of the physical examination; Gladney responded that he had not yet completed that obligation.

Shortly thereafter, on February 13, 1987, Gladney consulted a Dr. Lovelace because he felt ill, and not for purposes of securing an insurance physical. The doctor's records from that visit reflect that Gladney, a diabetic, was overweight, suffered from hypertension, had a family history of heart disease, and needed to undergo a heart evaluation. Lovelace performed the evaluation three days later but did not conduct all the tests normally required by Paul Revere for disability insurance.

Significantly, Gladney failed to inform Paul Revere's agent, as previously agreed, that he had taken a physical examination. Less than a month later, in April 1987, the plaintiff complained of chest-related pains, leading to his immediate hospitalization and heart surgery. Gladney's business partner finally informed the insurance agent of the hospitalization and prior physical examination, whereupon the agent sent the medical application form (Part 2) to Lovelace. The

doctor answered those questions which he could from the information available in treating Gladney during the preceding weeks; however, the doctor was unable to answer all questions, as some required tests that had not been performed.

The medical application form also specified that those with a family history of diabetes were to forward a urine specimen to Paul Revere's home office. Gladney had reported such a family history in Part 2 but failed to forward a sample. Further, Gladney noted on the medical application, without elaboration, having had "indications of or [having] been treated for chest pain, heart murmur, high blood pressure, or any disease of the heart, blood vessels, or blood."

Paul Revere's agent submitted Parts 1 and 2 of the application, to the extent completed, and the $3,100 premium check, to the home office in Massachusetts. Thereafter, Gladney sought recovery of costs incident to his hospitalization and disability, claiming coverage under the Receipt and Conditional Insuring Agreement. However, Paul Revere disavowed liability and returned the six-month check as being too old.

In addition, the company claimed that interim coverage was not "in effect" as defined in the conditional insuring agreement, since preconditional medical examinations had never been completed.[3] The district court found the company's arguments persuasive and interpreted the conditional insuring agreement as not being in force. Accordingly, it granted Paul Revere's motion for summary judgment.

Gladney appeals this adverse judgment, believing that coverage relates back to the moment when he completed Lovelace's

less than six months before, in lieu of Part 2's medical form. The company, however, rejected this suggestion, but not before the executed Part 1 became "stale," as exceeding the thirty-day window to complete an evaluation.

**3.** The "effective date" of the Receipt and Conditional Insuring Agreement is defined as

[t]he date of the *minimum deposit, or the date on which our initial application requirements are fulfilled* for all persons proposed for coverage, or the issue date requested in writing

by the Applicant for the policy, *whichever is later.* Our initial application requirements consist of completion of the Application and any required supplement and completion of any required medical exams and supplementary tests for each person proposed. We will determine these requirements according to our published rules based upon the amount of insurance applied for and the medical history of the persons proposed for coverage (emphasis added).

physical examination and that he has "substantially complied" with all preconditions for coverage. He places great significance upon the fact that his partner's application was accepted for coverage notwithstanding the fact that a premium check was seven months old. Gladney argues that Paul Revere should be estopped from denying coverage here or, alternatively, that the policy is ambiguous and should be construed in his favor.

## II.

### A.

As federal jurisdiction in this case is premised upon diversity of citizenship, neither party disputes that the substantive law of Mississippi governs our interpretation of the policy. Moreover, because the "interpretation of a contract is a question of law, including the question whether the contract is ambiguous," *Ross v. Western Fidelity Ins. Co.*, 872 F.2d 665, 668 (5th Cir.), *clarified*, 881 F.2d 142 (5th Cir.1989), we review the district court's construction of the insurance policy *de novo. See Truehart v. Blandon*, 884 F.2d 223, 226 (5th Cir.1989); *Reid v. State Farm Mut. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986).

We apply the same standard of review as the district court when summary judgments are challenged on appeal. *Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 548 (5th Cir.1989); *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.), *clarified*, 832 F.2d 1378 (5th Cir. 1987). That is, summary adjudications should be affirmed if, after an independent review of the record, there is no genuine issue as to any material fact and the movant is entitled to a judgment in its favor as a matter of law. *Moore*, 871 F.2d at 548–49; *Brooks*, 832 F.2d at 1364. To that end, all evidence must be reviewed in a light most favorable to the nonmovant, *Bodnar v. Synpol, Inc.*, 843 F.2d 190, 192 (5th Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988), and all questions of law that underlie the grant of summary judgment are subject to *de novo* review. *Brooks*, 832 F.2d at 1364.

### B.

In Mississippi, an insurer is under no duty to insure every applicant and is in fact free to state the terms upon which insurance may be obtained. *Interstate Life & Accident Ins. Co. v. Flanagan*, 284 So.2d 33, 36 (Miss.1973). In addition, insurers may place conditions precedent upon the application process, requiring, for example, submission of all medical reports and final home-office approval before binding itself to cover certain risks. *Estate of Fishel v. Guardian Life Ins. Co.*, 781 F.2d 901 (5th Cir.1986) (unpublished), slip op. at 7. Where not all conditions precedent have been satisfied, delays in processing insurance applications do not constitute an actual or implied acceptance.[4]

In addition, Mississippi law instructs that the *depositing* of a check, in and of itself, does not constitute an acceptance of an offer. *See Houston Dairy, Inc. v. John Hancock Mut. Life Ins. Co.*, 643 F.2d 1185, 1187 (5th Cir. Unit A May 1981) (citing *Becker v. Clardy*, 96 Miss. 301, 51 So. 211 (1910)). Applying that rationale here, the holding of a check for purposes of submitting a complete application package to the home office does not, without more, bind an insurance carrier.

In this case we must determine whether the conditional insuring agreement was in force on the date of Gladney's hospitalization. We begin by noting that in Mississippi, the insurance contract determines the rights of the parties unless the contractual provisions are contrary to public policy. *Cauthen*, 88 So.2d at 104. That being so, the conditional agreement at issue here does not operate to provide coverage *unless* and *until* Paul Revere's "initial application requirements are fulfilled," defined

---

4. *Fishel*, slip op. at 7 (citing *Franklin Life Ins. Co. v. Hamilton*, 335 So.2d 119 (Miss.1976); *Life & Casualty Ins. Co. v. Harvison*, 187 So.2d 847 (Miss.1966); *Cauthen v. National Bankers Life Ins. Co.*, 228 Miss. 411, 88 So.2d 103 (1956)).

to include "any required medical exams and supplementary tests."[5]

We understand this language to allow the company an opportunity to solicit medical reports, review such reports, and demand clarification or additional tests. Gladney would have us believe, however, that physical examinations that fall short of an insurer's medical requirements, or that are undertaken for reasons unrelated to an insurance physical examination, nevertheless can expose the insurer to liability. We disagree.

There is no dispute that Lovelace lacked all the necessary medical information requested in Part 2 of the application, that no urine sample was provided to the home office, and that no agent of Paul Revere had reviewed any medical records *prior* to Gladney's disability. We reject the proposition that Gladney's visits to Lovelace in February and April 1987 satisfied Part 2's medical requirements, especially since Gladney remained silent concerning these consultations.

Paul Revere was informed of the medical visits only *after* Gladney became disabled. Consequently, the insurer was never afforded an opportunity to review the records, to demand clarification, or to seek additional tests—a right which Company reserved onto itself in the insurance contract.

■ Gladney argues that review of medical information *prior* to a disability is irrelevant. The dispositive factor, the argument advances, is whether a medical examination performed during the application process would have led, ultimately, to approval but for the applicant's untimely disability. That is, if an applicant's medical examination is sufficient to qualify for insurance under settled company rules at the time of the physical, but before final approval, a detrimental medical development prior to the effective date for coverage is of no consequence to the rights of the parties.

To support this proposition, Gladney cites caselaw authority focusing upon *terminations* of insurance coverage that offend public policy, or upon the duty of carriers to investigate the claims of their *insureds*. These cases are distinguishable from the case at hand, as the claimants there had already secured coverage. As Paul Revere correctly notes, one must first secure approval for insurance coverage before challenging bad-faith terminations or invoking the duty to investigate claims. That is, until an *applicant* becomes an *insured*, a transformation defined by the final or interim policy, an insurance carrier owes no obligation to pay for the disabilities of applicants. *See Cauthen, id.* at 104–05.

■ Gladney also believes that principles of estoppel, negligence, and waiver operate in this case to bind the company. He places great significance upon the fact that the application was intentionally left undated and that his partner was approved for coverage despite a seven-month-old check. We conclude, however, that the date of the application is irrelevant for purposes of determining when the conditional insuring policy became operative. As defined by the contract, the "effective date" is shaped by factors (*i.e.*, receipt of premium, completion of medical examination, or a requested issuance date, whichever comes last) other than the date affixed to the application.[6]

In addition, "Mississippi permits neither waiver nor estoppel to create an insurance contract."[7] These equitable doctrines are not instruments to allow an insurance applicant to benefit from his own dereliction in completing the necessary forms. We conclude as a matter of law that Gladney failed to satisfy conditions precedent for interim disability coverage. Since the in-

---

5. See definition of "effective date," *supra* note 3.

6. *See supra* note 3.

7. *Fishel,* slip op. at 8 (citing *Frank Gardner Hardware & Supply Co. v. St. Paul Fire & Marine Ins. Co.,* 245 Miss. 320, 148 So.2d 190 (1963); *Hartford Accident & Indem. Co. v. Lockard,* 239 Miss. 644, 124 So.2d 849 (1960); *Saucier v. Life & Casualty Ins. Co.,* 189 Miss. 693, 198 So. 625 (1940)).

terim policy never became operative, the summary judgment is

AFFIRMED.