**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No.95-60678
(Summary Calendar)

_____

CERTAIN INTERESTED UNDERWRITERS
AT LLOYDS

Plaintiff-Appellee,

versus

TUPELO PUBLIC SCHOOL DISTRICT,
TUPELO, MISSISSIPPI,

Defendant-Third Party Plaintiff-Appellant

versus

GULF NATIONAL INSURANCE COMPANY

Third Party Plaintiff-Appellee.

_____

Appeal from United States District Court
for the Northern District of Mississippi
1:92CV317-S-D

_____

July 3, 1996
Before JOLLY, JONES and STEWART, Circuit Judges.

PER CURIAM:[*]

When the district court granted summary judgment to Gulf National Insurance Company ("Gulf") and Lloyds, Tupelo Public School District appealed, arguing that the insurance contracts at issue were ambiguous. Finding no ambiguity, and finding that Gulf is entitled to judgment in its favor as a matter of law, we AFFIRM.

## FACTS

The facts of this case are not at issue, and were clearly set forth in the district court's opinion. Thus, they need not be repeated here. Tupelo adopted a self-insured medical plan for its school district employees and their dependents, and then insured the plan itself through the purchase of excess loss indemnity insurance from Gulf. Gulf obtained reinsurance for its risk through Lloyds. When Tupelo requested reimbursement for a claim incurred during the policy period, but paid after its termination, Gulf denied the claim as outside the scope of the policy.

The district court found that the Gulf excess insurance policy clearly and unambiguously covered only claims actually paid during the policy period. As the claim filed by Tupelo was paid after the policy period, it was not covered by Gulf's and Lloyds excess insurance. The court also found that this provision was not unconscionable, and granted summary judgment to Gulf and Lloyds as a matter of law.

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Tupelo argues that the policy was ambiguous as a matter of law, and thus should have been construed in favor of the insured to provide coverage for claims incurred but not actually paid during the policy period. The Gulf policy provided that the policy period would be from September 1, 1990 to August 31, 1991, and that Gulf would be liable for "100% of *paid* aggregate losses .. in excess of the aggregate attachment point." The policy further delineated that Gulf would pay "a percentage [in this case 100%] of the amount by which the aggregate losses you have paid," and it defined aggregate losses as "the total amount of money *you have actually paid during your policy period* to, or on behalf of, all [covered] persons." The Gulf policy further provided that the limit of its liability would be "100% of *paid* specific losses in excess of the specific deductible amount." It defined specific losses as:

> the total amount of money *you have actually paid during our policy period* to, or on behalf of, any one person covered under your Employee Benefit Plan. Such payments must have been made for covered expenses which were incurred after the Effective Date of your policy, or during the 12 month period immediately prior to such Effective Date.

## DISCUSSION

The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination, which, like the court's summary judgment, is reviewed de novo on appeal. *Constitution State Ins. Co. v. Iso-Tex Inc.*, 61 F.3d 405, 407 (5th Cir. 1995). Summary adjudications should be affirmed if, after an independent review of the record, there is no genuine issue as to any material fact and the movant is entitled to judgment in its favor as a matter of law. *Gladney v. Paul Revere Life Ins. Co.*, 895 F.2d 238, 241 (5th Cir. 1990). The substantive law of Mississippi governs the interpretation of the insurance policy in this diversity dispute. *See id.*

3

As a general rule, provisions of an insurance contract are to be construed strongly against the drafter. *Nationwide Mutual Ins. Co. v. Garriga*, 636 So. 2d 658, 662 (Miss. 1994). Any ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage. *Id.* Nevertheless, where there is no substantial ambiguity requiring adjudication, a contract must be enforced as written. *Shaw v. Burchfield*, 481 So. 2d 247, 252 (Miss. 1985); *Dennis v. Searle*, 457 So. 2d 941, 945 (Miss. 1984). In construing particular provisions in a contract, a court will look to the document as a whole, and the mere fact that the parties disagree about the meaning of a provision of an insurance contract does not make the contract ambiguous as a matter of law. *Cherry v. Anthony*, 501 So. 2d 416, 419 (Miss. 1987).

Tupelo argues that the policy, when read as a whole, is ambiguous because a reasonable person could interpret the "incurred" language that accompanies the definitions of the terms aggregate losses and specific losses as implying that Gulf will be liable for reimbursement of benefits incurred during the policy period and the twelve months preceding it, not just reimbursement of claims paid during the policy period.[1] Furthermore, Tupelo argues that this interpretation is buttressed by the purpose of the policy, and Gulf's interpretation limiting reimbursement to "claims paid" violates that purpose because it would lead to illogical consequences considering the purpose of the policy. If, as was the case here, a covered person happened to be in the hospital on the day that the policy expired, Tupelo would have to pay for that care before the insured even checked out of the hospital in order to be reimbursed by Gulf. Tupelo posits that the policy does not contain a

---

[1]The policy defines aggregate losses as "the total amount of money you have actually paid during your policy period to, or on behalf of, all persons covered under your Employee Benefit Plan. Such payments must have been made for covered expenses which were incurred after the Effective Date of your policy, or during the 12 month period immediately prior to such Effective Date."

provision requiring that expenses be incurred and paid during the policy period, and nothing in the Gulf policy unambiguously supports the contentions of Gulf and Lloyds that it does.

As the trial court found, the policy's language clearly states that claims must have been paid during the policy period to qualify for reimbursement. When read as a whole, the policy clearly and repeatedly limits reimbursement to claims that have been paid during the policy period. The purpose of the "incurred" language was clearly to further limit liability by explaining that of all the benefits that Tupelo paid out during the term of the insurance, the only ones that would be reimbursed were the ones pertaining to benefits incurred during the term of the insurance or incurred during the twelve months previous to that term. The language used in the policy consistently and repeatedly limits reimbursement to claims that Tupelo actually paid during the one-year term of Gulf's policy.

Tupelo argues that limiting repayment to claims paid is an unfair interpretation of the contract with Gulf, and implies that such an interpretation would even be unconscionable and against the purpose of the policy. An unconscionable contract is one "such as no man in his senses, and not under delusio n, would make on the one hand, and as no honest and fair man would make on the other. *Terre Haute Cooperage v. Branscome*, 35 So. 2d 537, 541 (Miss. 1948). Consistent with the nature and purpose of a "claims paid" policy, the policy obligated Gulf to pay for medical expenses that were paid during the policy period even though they may have been incurred up to twelve months prior to the effective date of the policy. Viewed another way, in exchange for taking the chance that it would have to cover losses incurred but not paid during the policy period, Tupelo received coverage of losses incurred up to twelve months prior to the effective date of the policy. Because of this substantial reciprocity, enforcing the contract as written is neither unfair nor unconscionable.

5

**CONCLUSION**

As the district court found, the policy was only seven pages long and was not confusing, complex, or ambiguous. Because Lloyds' duty to indemnify Gulf is founded upon a separate, derivative policy, Lloyds' liability is contingent and arises only if Gulf is liable. As Gulf is not liable, neither is Lloyds. AFFIRMED.