**SOUTH COAST LIFE INSURANCE COMPANY, Appellant,**

v.

**Wade Earl ROBERTSON, Appellee.**

**No. 628.**

Court of Civil Appeals of Texas, Tyler.

July 6, 1972.

Rehearing Denied July 27, 1972.

Atwell, Malouf, Musslewhite & Bynum, R. Jack Ayres, Jr., Dallas, for appellant.

Thomas A. Sneed, Odessa, for appellee.

DUNAGAN, Chief Justice.

This is an appeal from a suit brought to recover life insurance benefits under a conditional receipt. Judgment, awarding life insurance benefits, was rendered for plaintiff, appellee, on favorable jury findings that appellee's wife was insurable and therefore insurance was effective upon the date of application and that appellee did not willfully bring about the death of his wife. It is from this verdict and resulting judgment that appellant has timely brought this appeal.

Appellant brings thirteen points of error complaining of the action of the trial court in awarding appellee his judgment. By these thirteen points, appellant in general, complains of the action of the trial court in (1) refusing to grant a directed verdict, (2) the submission of certain issues and instructions, and (3) the sufficiency of the evidence to support certain jury findings.

In passing on appellant's point of error that there is no evidence to support the submission of Special Issue Number 1 or the jury's answer thereto, we may consider only that evidence, if any, which, viewed in its most favorable light, supports the jury finding, and we must disregard all evidence which would lead to a contrary result.

The relevant facts are these. On January 28, 1969, the appellee Robertson, unaccompanied by his wife, went to the office of the appellant located in Tyler, Texas. His presence at the office was wholly unsolicited. At this time he requested of Mrs. Winn Cardwell, an agent of appellant, in-

formation regarding a policy of life insurance on the life of his wife. Appellee was informed by Mrs. Cardwell that she could not write such a policy without having first seen the individual to be insured, to ask him certain questions. Thereafter on the same day, appellee returned to the office accompanied by his wife, Teresia Ann Robertson. After supplying the required information, Teresia Robertson signed the application for insurance benefits in the sum of $25,000.00. On the next day the first premium payment of $10.84 was paid in cash by appellee, for which payment he received a receipt.

At the time of the application for insurance on the life of Teresia Robertson, appellee's sole occupation was that of hairdresser for which he earned approximately $4,000 a year; Teresia Robertson was unemployed. Mrs. Robertson at the time of the application for insurance was seven months pregnant and had not been examined by a doctor since October, 1968. Appellee, the sole wage earner, did not have any insurance covering his life. The plan of insurance applied for was not a permanent plan and the mode of premium payment was monthly.

On February 6, 1969, the insured, Teresia Ann Robertson, died in Tyler, Texas, as a result of a gunshot wound of the skull. Appellant, South Coast, declined coverage under the application by a letter of February 10, 1969, denying liability on the policy.

Appellee by his suit sought recovery of insurance benefits not on the policy of insurance itself, but on the "conditional receipt." As noted before, appellee upon paying the first month's premium received a numbered receipt. The receipt read in part:

"TERMS AND CONDITIONS OF CONDITIONAL COVERAGE—Coverage under any policy or rider issued from the Application bearing the same number as this receipt will take effect on the latest of: (a) The date of the application or (b) the date of the last of any medical examination or other test re-

quired under the rules and practices of the Company as published in the Company's Rate Book; provided the following conditions precedent to coverage are met: (1) That on such date each person proposed for insurance is insurable and acceptable for the plan and amount of the insurance applied for, at the published premium rate and the plan and classification of risk without limitation or exclusion, and in accordance with the Company's underwriting standards and practices as published in the Company's Rate Book, and (2) That the sum receipted for is at least equal to the first full premium for any policy or rider applied for.

\*　　\*　　\*　　\*　　\*　　\*

"Except as provided above, no coverage will take effect and the liability of the Company is limited to a refund of any sum receipted for. Any application not previously accepted or declined will be deemed declined on the 60th. day after its date."

It is upon this "conditional receipt" and its conditions of coverage that appellee must predicate his recovery. It has been held by our Supreme Court that "conditional receipts" such as the one presently before us provide for temporary life insurance. National Life and Accident Insurance Company v. Blagg, 438 S.W.2d 905 (Tex.Sup., 1969) and United Founders Life Insurance Company v. Carey, 363 S.W.2d 236 (Tex. Sup., 1962). Under the terms of the "conditional receipt" here the temporary insurance will become effective on "\* \* \* (a) The date of the application or (b) the date of the last of any medical examination or other test required under the rules and practices of the Company as published in the Company's Rate Book; *provided* \* \* (1) That on such date each person proposed for insurance is insurable and acceptable for the plan and amount of the insurance applied for, \* \* \* in accordance with the Company's underwriting standards and practices \* \* \* and (2) That the

sum receipted for is at least equal to the first full premium for any policy or rider applied for." (Emphasis ours).

■ How then may appellee show this temporary coverage? We quote from Blagg, supra,

"Thus, a beneficiary can prove that the temporary insurance provided by the receipt was in force when the applicant died by obtaining a fact finding that in the opinion of the officers of the insurance company the applicant was insurable and acceptable on the date of the completion of his medical examination. Even if the opposite finding is made by the jury, i. e., the opinion was formed that the applicant was not insurable and acceptable on the date of the completion of his medical examination, the beneficiary can still prevail by obtaining a fact finding that the determination of uninsurability was not made in good faith. As a part of this second basis of recovery, it would also be necessary to obtain a finding that a reasonably prudent authorized officer of the insurance company, acting in good faith, would, on the evidence available, find that the applicant was on the date of the completion of his medical examination insurable and acceptable for insurance under the com-

pany's rules and practices for the amount, premium, and rating class set in his application for insurance."

■ In the trial of the case at bar, the first and second basis of recovery as set out in *Blagg* and *Carey*, supra, were submitted to the jury in Special Issues Numbers 1 through 3.[1] Special Issues Numbers 2 and 3 submitted conditionally were not answered by the jury, the jury answering Special Issue Number 1 in the affirmative. It should be noted here that the burden rests upon the appellee-beneficiary to establish insurability and/or in the alternative a lack of good faith and further that a reasonably prudent underwriter acting in good faith would find that the applicant was insurable and acceptable on the date in question. See Blagg, supra.

■ The determinative issue, therefore, before this court is whether appellee met this burden, or stated another way, is there any evidence to support the jury's affirmative answer to Special Issue Number 1? After a careful and complete review of the record, we think not and that the case should be reversed. A search of the record discloses that appellee wholly failed in his burden, that is, that the evidence is wholly lacking to support the affirmative answer

1. "SPECIAL ISSUE NO. 1
"Do you find from a preponderance of the evidence that on the date of Teresia Robertson's application to Defendant Insurance Company for insurance, that she was insurable and acceptable for the plan and amount of the insurance applied for at the published premium rate and the plan and classification of risk without limitation or exclusion, and in accordance with the Company's underwriting standards and practices as published in the Company's Rate Book?

\* \* \* \* \*

"If you have answered the preceding Special Issue 'No,' then you will answer Special Issue No. 2; otherwise, do not answer it.

"SPECIAL ISSUE NO. 2
"Do you find from a preponderance of the evidence that the authorized officer of Defendant Insurance Company, Lloyd

Posey, did not act in good faith in declining such application?

\* \* \* \* \*

"If you have answered the preceding Special Issue 'He did not,' then answer the following Special Issue; otherwise, do not answer it.

"SPECIAL ISSUE NO. 3
"Do you find from a preponderance of the evidence that a reasonably prudent and careful authorized officer of the Defendant Insurance Company acting on good faith would, on the evidence available, find that Teresia Robertson was insurable and acceptable for the plan and amount of the insurance applied for, at the published premium rate and plan and classification of risk without limitation or exclusion, and in accordance with the Company's underwriting standards and practices as published in the Company's Rate Book?

\* \* \* \* \* "

to Special Issue Number 1 and also the alternative means of recovery.

Appellee produced no affirmative evidence that Teresia Robertson, on the date in question, was insurable under the appellant's underwriting standards and practices. On the contrary, Lloyd Posey, vice president and chief underwriter for appellant at the time of appellee's application, called by appellee's counsel, testified that in his opinion as chief underwriter, Mrs. Robertson was not insurable on the date in question when applying the company's underwriting standards and practices. He further testified that the company's underwriting standards and practices as published in their Rate Book contemplated such a subjective decision by the underwriter.

Likewise a review of the record discloses no affirmative evidence to support the submission of the alternative means of recovery, i. e., Special Issues Numbers 2 and 3. Nowhere does the record reveal any evidence of bad faith.

We therefore reverse the judgment of the trial court and herein render judgment for the appellant.