LIFE INSURANCE COMPANY OF the
SOUTHWEST, Appellant,

v.

Ruben L. NIMS et ux., Appellees.

No. 15326.

Court of Civil Appeals of Texas,
San Antonio.

July 17, 1974.

James D. Guess, Groce, Locke & Hebdon, San Antonio, for appellant.

Phillip D. Hardberger, San Antonio, for appellees.

BARROW, Chief Justice.

Appellees, Ruben L. Nims and wife Patricia Nims, brought this suit upon an alleged contract of life insurance based upon a binding receipt issued by appellant in conjunction with an application for a policy on their infant son. Judgment was rendered on the jury verdict for the face amount provided in the application.

On February 3, 1972, Clyde C. Bennett, a general agent of appellant, solicited an application from appellees for a life insurance policy in the face amount of $25,000.00 on Ruben L. Nims, Jr., the month-old son of appellees. The application was completed by Bennett and Mr. Nims and received by appellant company on February

7, 1972, along with the initial premium of $12.63. No medical examination was required for this policy, however, appellant requested a medical statement from the attending physician who delivered the infant. While this statement and other medical information was being secured from Brooke Army Medical Center, the child became ill with bronchitis and died on March 15, 1972. The application for the policy was rejected by appellant on March 20, 1972, and after denial of appellees' claim for benefits under the binder receipt, this suit was brought on same. The basic question in the trial court and here is whether interim coverage is provided by the binding receipt in said application.

The binding receipt provides in part that the insurance applied for is effective from the date of application provided: (1) the first premium has been paid; (2) all required medical examinations are completed within sixty days; (3) that the applicant be a risk acceptable to the company under its rules, limits and standards on the plan and for the amount applied for without modification and at the rate of premium paid; and (4) that the proposed insured be in good health on the effective date. Appellant concedes that the first two requirements were met.

■ Many life insurance companies issue binding receipts to the applicants upon the payment of the first premium with the general provision that the insurance shall be considered as in force from the date of the receipt or the date of the medical examination, provided the application is approved and accepted at the home office of the insurer. Such a binding receipt is supported by valid consideration and forms a contract. See 12 Appleman, Insurance Law and Practice, Section 7222, Note 31.5 (1974 supplement).

■ It is now settled Texas law that a beneficiary can prove that the temporary insurance provided by the binding receipt was in force when the applicant died. This is done by obtaining a fact finding that on the effective date, the applicant was insurable and acceptable to an authorized officer of the company. Even if the finding is contrary, the beneficiary can still prevail by obtaining a fact finding that the determination of uninsurability was not made in good faith. As a part of this second basis of recovery, it is necessary to secure a finding that a reasonably prudent authorized officer of the insurance company, acting in good faith, would, on the evidence available, find that the applicant was on the effective date insurable and acceptable for insurance under the company's rules, limits and standards on the plan and for the amount applied for without modification and at the rate of premium paid. A third basis of recovery is afforded if the insurance company arbitrarily refused to proceed to the formation of an opinion after the applicant's death, and a reasonably prudent underwriter confronted with the same circumstances would have formed the opinion that he was insurable. National Life and Accident Insurance Company v. Blagg, 438 S.W.2d 905 (Tex.1969); United Founders Life Insurance Company v. Carey, 363 S.W.2d 236 (Tex.1962).

Here the second theory of recovery was submitted to the jury; and in response to the two issues submitted,[1] the jury found that the company's determination of unin-

---

1. The jury found substantially as follows:
 1. The Company's determination of the child's uninsurability was not made in good faith.
 2. That a reasonably prudent and careful authorized officer of said Company, acting in good faith, would, on the evidence available on March 20, 1972, have found that said child was on February 3, 1972, insurable and an acceptable risk to the company under its rules, limits and standards on the plan and for the amount applied for and at the rate of the premium paid in connection with his application for insurance.

surability was not made in good faith and further that a reasonably prudent and careful authorized officer of said company, acting in good faith, would, on the evidence available on March 20, 1972, have found that said minor was insurable and an acceptable risk to the company on February 3, 1972, under its rules, limits and standards on the plan and for the amount applied for and at the rate of premium paid in connection with said application.

 Appellant asserts by seven assignments of error that there is no evidence or insufficient evidence to support these jury findings. In considering the "no evidence" points, we must consider only the evidence and the inferences tending to support such findings and disregard all evidence and inferences to the contrary. On the other hand, in resolving the "factual insufficiency" points, we are required to consider all the evidence in the record. Garza v. Alviar, 395 S.W.2d 821 (Tex. 1965); University of Texas: Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 359 (1960).

The facts are largely undisputed. On January 3, 1972, a son was born to appellee, Mrs. Patricia Nims, at the Brooke Army Medical Center (BAMC). Appellees were acquainted with Mr. Bennett, a general agent for appellant, and in fact, had purchased substantial life insurance policies through him for each member of the family, including policies of $25,000.00 each on Mrs. Nims and their small daughter. Nims contacted Bennett after the birth of his son for the purpose of purchasing a life insurance policy on said son and an appointment was made for January 31. In the meantime, the baby was hospitalized at BAMC on January 29th for vomiting and diarrhea. Mrs. Nims advised Bennett of this hospitalization and, at his suggestion, she was requested to call Bennett when the baby was released. The baby was discharged from the hospital on February 1st, and Bennett called on appel-

lees on February 3rd to complete the application for a $25,000.00 policy on the life of the baby. The application was filled out and signed by Mr. Nims and Bennett on this date and mailed to the Company. Although the information given on this form is incorrect in not mentioning the prior illness of the infant, no point of this inaccuracy was made by appellant in the trial court or on this appeal.

The application was received by appellant at its office in Dallas on February 7, 1972, and referred to Ms. Margaret Hill, the only underwriter for appellant. No medical examination is required for this type policy; however, a statement from the attending physician is required. Since no doctor's name was given in the application, Ms. Hill immediately mailed a memorandum to Bennett requesting the name and address of the child's pediatrician. She also initiated an inquiry regarding other policies or claims on behalf of the child through the Medical Information Bureau (MIB), and ordered an investigation to be made by a private firm regularly used by appellant. The negative MIB report was received on February 14th. The investigator's report was received on February 16th, and contained no adverse information. In part, it states: "The child is of good health, with no known deformities. He is well cared for by his parents." Ms. Hill was verbally advised of the place of birth, and, on February 16th, a form for medical information on the child was sent to BAMC, together with a check for $5.00.

On March 15th, Ms. Hill was advised by Bennett that the child had died, and he inquired as to the status of the policy. At her direction, Mr. Bennett immediately went to the records office at BAMC to expedite the forwarding of the child's record. On March 20th, appellant received a photostatic copy of the medical records on the child, at least through his release from the hospital on February 1st. Included in the narrative summary of his hospitalization for a mild case of gastroenteritis was a

finding of a grade one (on a scale of six) short systolic murmur at the left sternal border. This was diagnosed as: "Murmur, cardiac, functional, suspected, not proven." A cardiac consultation was obtained at BAMC and additional tests run in connection with this questionable condition. Ms. Hill denied that she saw the results of this consultation, although a full report of same, dated February 17th, is in the BAMC records, and the report concludes that the child had no heart murmur and no evidence of any heart disease. Nevertheless, Ms. Hill testified that she rejected the application on the preliminary diagnosis of suspected heart murmur as contained in the hospital report.

■ The binding receipt provides coverage if the applicant was a risk acceptable to the company under its rules, limits and standards. Obviously, if the contract is to have mutuality, the rejection must be based on some standard. Yet, the testimony of Ms. Hill is that the company has no published rules, limits and standards. Rather, she relies upon manuals put out by larger companies. She denied reliance on any specific manual as a general rule and admitted that she did not consult any manual regarding this application. Several of the manuals she admitted using in her work were introduced into evidence, and it is seen that all are somewhat similar. The general plan of accepting and underwriting risks used by most companies, which is used by appellant, according to Ms. Hill, is that points are assigned to the physical condition of an applicant. Few persons are in perfect physical condition; and, therefore, certain standards have been established for every conceivable physical condition. An average, healthy person is given 100 points and various ailments and conditions are assigned additional points based upon the underwriting experience of the insurance companies. Ms. Hill testified that a person with up to 125 points

can be issued a standard policy at standard rates.

It is seen that under each of the manuals in evidence, no penalty point is attached to a grade one heart murmur which is classified as functional. A grade one murmur is very, very mild and hardly audible. A large percentage of infants temporarily have such condition. Nevertheless, it is the testimony of Ms. Hill that she rejected the application because of the statement in the narrative summary regarding the grade one systolic murmur. The summary available to Ms. Hill states that this condition was merely "suspected, not proven" and that tests were ordered to be made on February 1st to substantiate the preliminary diagnosis. These tests and subsequent examination of the child as reported on February 17th established that the suspected diagnosis was erroneous and that the child did not have even a grade one murmur. These reports were available to Ms. Hill prior to March 20th[2] and fully support a finding that the child could be issued a standard policy at the standard rate under the underwriting manuals usually relied on by Ms. Hill.

■ We conclude that there is sufficient evidence under the "no evidence" test to raise a fact issue that a reasonably prudent and careful authorized officer of said company, acting in good faith, would, on the evidence available on March 20, 1972, have found that said child was on February 3, 1972, insurable and an acceptable risk on the plan, and for the amount applied for and at the rate of the premium paid in connection with his application for insurance. In other words, if the child had not died, the application would have been accepted. We cannot say from an examination of the record as a whole that the jury's finding on this issue is so against the great weight and preponderance of the evidence as to be manifestly unjust.

2. These reports were in the BAMC file prior to March 16th when the file was mailed to appellant, and the jury could believe they were furnished appellant.

A more difficult question is presented by the issue inquiring as to the "good faith" of the company in that such issue involves the question of intent and requires a determination of a state of mind. Occidental Life Insurance Company of California v. Bob LeRoy's Inc., 413 F.2d 819 (5th Circuit Court of Appeals 1969). Ms. Hill testified that although she knew the child had died, this fact did not enter into her decision.[3] She was an interested party; thus, this subjective conclusion was not binding on the jury, who were free to draw a contrary inference from other facts and circumstances. By her own testimony, Ms. Hill made no effort to ascertain the result of the scheduled tests or consultation on the suspected functional heart murmur. It was apparently immaterial to her that this questionable diagnosis of a minor condition might be proven false, as it actually was found. Furthermore, the manuals on which Ms. Hill usually relied, attached no penalty to such a condition, even if it existed. Ms. Hill testified that she summarily rejected the application without consulting a single manual. Further suspicion is attached to her testimony that she secured the medical director's opinion after she had already decided to reject the application. She testified that she did not tell the doctor of the child's death although she was personally present when he reviewed the application, and he recommended postponing same for a year. The jury could consider the unusual circumstance that she had the doctor make a written recommendation in this case although written recommendations were not made in other cases. These facts and circumstances justify an inference, apparently found by the jury, that after Ms. Hill learned of the child's death, she rejected the claim and then started looking for a basis to support such action. There is evidence to raise the issue of good faith, and the jury finding on said issue is supported by sufficient evidence.

The binding receipt in question provides in part that it is effective prior to delivery of the policy provided that the proposed insured is in good health on the effective date. No issue was submitted to the jury on this requirement and appellant asserts on this appeal that the trial court erred in entering judgment on the binding receipt in the absence of a finding of good health. Such error, if any, has not been properly preserved herein in that appellant did not complain of same in its amended motion for new trial. See Rule 324, Texas Rules of Civil Procedure. Appellant did file a motion for judgment non obstante veredicto, but same relates entirely to the alleged lack of evidence to support the giving of the two issues to the jury and does not mention the good health provision. In any event, there was no objection by appellant to the failure of the court to submit an issue on the question of good health of the child on February 3, 1972, and we, therefore, must presume that the parties waived a jury trial on this issue. The judgment of the trial court implies a finding by the court on said issue favorable to appellees. Rule 279, T.R.C.P.; Kirk v. Standard Life and Accident Insurance Company, 475 S.W.2d 570 (Tex.1972).

Appellant complains by three points of the admission into evidence of two exhibits, as well as, of the testimony of Dr. Luis Canales, Chief of the Department of Pediatrics at BAMC. The two exhibits contain the entire BAMC file on the child, and Dr. Canales' testimony was relative thereto. Ms. Hill testified that the file sent her by BAMC contained only the records pertaining to the birth and hospitalization of the child prior to February 1st. Appellant urges that since the effective date of the binding receipt is February 3rd, the company was required to make its decision solely from the information available on that date.[4] It, therefore, objects to

---

3. Ms. Hill professed not to know that the child had actually died from a wholly unrelated condition.

4. It is seen that the narrative summary purportedly relied on by Ms. Hill in rejecting the policy is dated February 14, 1972.

**718**

medical records and medical history of the child which were acquired after February 3rd. It is seen, however, that the question before the jury is whether the company, acting in good faith, would, on the evidence available on March 20th, have found that said child was insurable and an acceptable risk on February 3rd. Therefore, the trial court properly admitted any evidence which was available to the appellant on March 20th. The court offered to limit the purpose of such evidence, but appellant did not choose to limit same. Reversible error is not demonstrated by these three evidentiary points.

Appellant's final point complains of the action of the trial court in overruling its objections to the submission of Special Issue No. 2 because said issue does not conform to the wording of the provision in the binding receipt. Specifically, appellant complains of the addition of the words "and careful" to the description of the company officer making the determination of insurability. This theory of recovery and form of the special issue was apparently based on the holding of the Supreme Court in United Founders Life Insurance Company v. Carey, supra, 363 S. W.2d at page 243. While the issue as suggested in National Life and Accident Insurance Company v. Blagg, supra, does not include the words "and careful," no significance is attached to the omission of such words. In our opinion, the addition of these words imposed a greater burden on appellees than that suggested in *Blagg*. We, therefore, cannot see that appellant was harmed in any manner by their inclusion. Reversible error is not demonstrated by such point of error. Rule 434, T.R.C.P.

We have considered all of appellant's assignments of error and conclude that reversible error is not presented herein. We, therefore, affirm the judgment of the trial court.