**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 96-20953**

---

**ANNETTE M. RINER; SUZETTE MARRIOTT,**

**Plaintiffs-Appellants,**

**VERSUS**

**ALLSTATE LIFE INSURANCE COMPANY,**

**Defendant-Appellee.**

---

Appeals from the United States District Court
for the Southern District of Texas

---

December 16, 1997

Before KING, DAVIS, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Annette Riner (Riner) and Suzette Marriott (Marriott) sued Allstate Life Insurance Company (Allstate) after Allstate refused to pay benefits under a temporary insurance agreement on the life of their father, Robert Marriott (Mr. Marriott). Allstate defended on the theory that alleged misrepresentations in the insurance application absolved it of liability. The district court granted summary judgment in favor of Allstate, and Riner and Marriott appealed. We reverse the district court's judgment in favor of Allstate and render judgment in favor of Riner and Marriott on the

issue of coverage.  We remand the cause to the district court for further development of the remaining liability issues and for a determination of damages.


**MATERIAL FACTS**

Prior to 1994, Mr. Marriott had five back surgeries, which left him with chronic back pain.  That back pain became aggravated and was joined by a feeling of loneliness and sadness after his wife of more than thirty years left him.  Following his divorce in June 1994, Mr. Marriott wanted to replace his life insurance policy, which named his ex-wife as beneficiary, with a new policy naming his daughters as beneficiaries.

Riner referred Mr. Marriott to an Allstate agent.  On June 29, 1994, Allstate sent an agent to Mr. Marriott's home to take his application information.  Allstate's lengthy standardized application contained a list of medical questions.  The applicant responded to those questions by checking boxes marked "yes" or "no."  When a box was marked "yes," the application contained additional space for further explanation by the applicant.  Mr. Marriott disclosed that he had chronic back problems and certain other medical problems.  Mr. Marriott's application is marked "no," however, with respect to whether he had ever received treatment for the use of alcohol or received treatment for depression within the past three years.

Mr. Marriott explained to the agent that he was "groggy" from medication he was taking for back pain.  After completing the

2

application, the agent requested an initial premium check in the amount of $276.23. The record reflects that Mr. Marriott was too affected by the painkillers he was taking to complete the check. For that reason, the agent completed the premium check, which was then signed by Mr. Marriott.[1] In return, the agent issued a "Receipt and Temporary Insurance Agreement" to Mr. Marriott. Although the agent left a copy of the agreement, the agent did not leave a copy of Mr. Marriott's application with Mr. Marriott. The temporary insurance agreement provided that Mr. Marriott's premium was received as "payment for life insurance" in the amount of $100,000. The agreement further provided that temporary coverage would start when Mr. Marriott's medical exam was completed. Mr. Marriott completed the medical exam on July 26, 1994.

Six days after the exam, Mr. Marriott died suddenly of either an aneurism or heart disease. Thereafter, his daughters made a claim under the temporary insurance agreement. On the claim form, Suzette Marriott indicated that Mr. Marriott was seeing a doctor for "depression/chronic pain." Allstate requested Mr. Marriott's medical records and began an investigation to determine whether it would pay benefits under the temporary insurance agreement. Three months later, Allstate denied liability under the temporary insurance agreement. Allstate denied liability because it

---

[1] Although the record does not conclusively establish whether the Allstate agent or Mr. Marriott completed the application form, the handwriting and tone of the answers is most consistent with the conclusion that the Allstate agent completed the application for Mr. Marriott, a fact that is clearly relevant with respect to whether Mr. Marriott's answers were intentionally deceitful.

3

concluded that, contrary to Mr. Marriott's answers in the application, he had received treatment for his use of alcohol and for depression.

## PROCEEDINGS IN THE DISTRICT COURT

Mr. Marriott's beneficiaries, Riner and Marriott, sued Allstate in Texas state court. Allstate properly removed the matter to federal court. In federal court, Riner and Marriott amended their complaint, alleging that Allstate's refusal to pay violated certain provisions of the Texas Insurance Code and the Texas Deceptive Trade Practices Act. Riner and Marriott also contended that Allstate's actions constituted a breach of contract and a breach of Allstate's duty of good faith and fair dealing. Allstate answered that Mr. Marriott's misrepresentations in the application absolved it of all liability.

Riner and Marriott moved for summary judgment on the issue of Allstate's liability, arguing that Allstate could not rely upon any misrepresentations in the application to deny coverage because Allstate failed to attach a copy of Mr. Marriott's application to the temporary insurance agreement, as required by article 21.35 of the Texas Insurance Code.[2]

---

[2] TEX. INS. CODE art. 21.35 (Vernon Supp. 1998) provides:

Except as otherwise provided in this code, every contract or policy of life insurance issued or contracted for in this State shall be accompanied by a written, photographic or printed copy of the application for such insurance policy or contract, as well as a copy of all questions asked and answered given thereto. The provisions of Articles 21.16, 21.17, and 21. 19 of this

4

Allstate responded that it was not required to attach the application because the temporary insurance agreement was not a "contract or policy of insurance" within the meaning of article 21.35. Alternatively, Allstate maintained that its delivery of the application and temporary insurance agreement to Mr. Marriott's beneficiaries after the death claim was filed satisfied the requirements of article 21.35. Allstate did not file its own motion for summary judgment.

The district court, acting sua sponte and without notice to the parties, granted summary judgment in favor of Allstate. The district court held that the temporary insurance agreement was not a "contract or policy of insurance" within the meaning of article 21.35. Instead, the district court reasoned that the temporary insurance agreement was merely a promise to provide insurance relating back to the date of application, if and when Mr. Marriott was determined to be an acceptable risk. Alternatively, the district court held that Allstate did not breach its statutory obligation to attach the application to the temporary insurance

code shall not apply to policies of life insurance in which there is a clause making such policy indisputable after two (2) years or less, provided premiums are duly paid; provided further, that no defense based on misrepresentation made in the application for, or in obtaining or securing, any contract of insurance upon the life of any person being or residing in this State shall be valid or enforceable in any suit brought upon such contract for the said term of two (2) years have been paid to, and received by, the company issuing such contract of its intention to rescind the same on account of misrepresentation so made, unless it shall be shown on the trial that such misrepresentation was material to the risk and intentionally made.

5

agreement because Part 2 of the application, which recorded Mr. Marriott's medical examination, was not completed until he was examined on July 26, 1994.

Riner and Marriott moved for reconsideration of the district court's denial of their motion for summary judgment and the district court's sua sponte entry of summary judgment in favor of Allstate. The motion was denied, and Riner and Marriott appealed both the final judgment and the district court's denial of their motion for reconsideration.

## DISCUSSION

## I.

## Allstate Issued an Enforceable Contract for Temporary Insurance

To resolve this appeal, we must first determine whether the temporary insurance agreement provided to Mr. Marriott was a "contract of insurance," as Riner and Marriott claim, or instead a conditional offer to provide coverage, as Allstate claims and the district court held.

Texas law governs our interpretation of the temporary insurance agreement. We review the district court's interpretation of Allstate's temporary insurance agreement de novo. *Gladney v. Paul Revere Life Ins. Co.*, 895 F.2d 238, 241 (5th Cir. 1990) (reviewing the district court's interpretation of Mississippi insurance law).

Allstate argues that a receipt and temporary insurance agreement is a novel creature that can never be a "contract or

6

policy of insurance" as contemplated by article 21.35. *See* TEX. INS. CODE art. 21.35 (Vernon Supp. 1998) (requiring that the application be attached to "every contract or policy of insurance"). We disagree. Texas law recognizes that a receipt and temporary insurance agreement can create a binding contract to provide temporary insurance. *See, e.g.*, ***United Founders Life Ins. Co. v. Carey***, 363 S.W.2d 236, 240-43 (Tex. 1962) (receipt issued with application may create enforceable contract for temporary insurance); ***Life Ins. Co. of the Southwest v. Nims***, 512 S.W.2d 712, 714 (Tex. Civ. App.--San Antonio 1974, no writ) (binder and receipt issued by insurance company upon payment of initial premium held to be contract of insurance); ***South Coast Life Ins. Co. v. Robertson***, 483 S.W.2d 388, 391 (Tex. Civ. App.--Tyler 1972, writ ref'd n.r.e.) ("It has been held by the Supreme Court that conditional receipts such as the one presently before us provide for temporary life insurance."). Whether any particular agreement for temporary insurance is a "contract of insurance" depends upon the language of the particular agreement, as interpreted using ordinary rules of contract construction. ***Carey***, 363 S.W.2d at 241 ("the wording of the particular receipt in controversy controls" whether a receipt creates an enforceable contract affording temporary coverage). When there is doubt about whether the agreement provides temporary coverage, or merely a conditional promise to consider the application, the construction that affords coverage will be adopted. *See id*. at 242-43; *see also* ***Blaylock v. American Guar. Bank Liab. Ins. Co.***, 632 S.W.2d 719, 721 (Tex. 1982) (setting forth

7

the general rule for determining whether coverage exists). "The policy of strict construction against the insurer is especially strong when the court is dealing with exceptions and words of limitation."[3]

The temporary insurance agreement issued to Mr. Marriott provides that $276.73 has been received "as payment for life insurance," subject to certain limitations defined in the agreement. Under a heading entitled "When Temporary Insurance Starts," the agreement provides that insurance will start on the date of the agreement, provided that (1) payment is accepted, (2) Part 1 of the application (containing the medical questionnaire) is completed, and (3) Question 25 of the application does not call for a medical exam. If, as in Mr. Marriott's case, the application requires a medical exam, then the agreement specifies that insurance will start when the contemplated medical exam is complete.

Under a heading entitled "When Temporary Insurance Will Stop," the agreement provides that temporary insurance will end when the first of any of the following conditions occurs: (1) Allstate provides notice that it is no longer considering the application; (2) Allstate provides notice that further medical exams in addition to the one requested in Question 25 of the application are required; (3) Allstate agrees to provide the coverage applied for in the application; (4) Allstate agrees to provide coverage other than as applied for in the application; or (5) sixty days passes.

---

[3] *Blaylock*, 632 S.W.2d at 721.

8

With respect to Allstate's decision to provide the coverage applied for, the agreement states that the permanent insurance "will then be provided by the policy as of its start date and not by this Agreement."

Under a heading entitled "Amount of Insurance," the agreement provides that the temporary insurance will have the same benefits, provisions and limitations as the plan applied for, subject to a limitation of $500,000 "under this Agreement and all other Agreements issued for pending applications for each person to whom this receipt applies."

Under a heading entitled "Conditions Under Which There is No Coverage," the agreement provides, in relevant part, "[i]f in the answers in the application, there is fraud or misrepresentation material to the home office underwriter's acceptance of the risk, then no insurance starts under the Agreement."

Finally, at the very bottom of the agreement, and below the signature line, there is an "agent reminder" that states: "If there is any 'Yes' answer to questions 9, 10, 11, 12 or 13, DO NOT accept money or give this receipt. Submit a trial application."

For the reasons that follow, we conclude that Allstate is obligated to pay proceeds to Riner and Marriott under the terms of the temporary insurance agreement.

9

## Temporary Insurance Started
## When Mr. Marriott Completed His Medical Exam

The district court held that Mr. Marriott did not apply for "gap" coverage. Instead, the district court found that the temporary insurance agreement was nothing more than a promise to provide coverage that related back to the application date if and when Allstate determined that Mr. Marriott was an acceptable risk.

The district court's construction is negated by the plain language of the agreement. The agreement states that insurance will start when Mr. Marriott's medical exams are complete. There is no language in the agreement either implicitly or explicitly conditioning the start date for temporary insurance upon Mr. Marriott's insurability or Allstate's acceptance of the risk.[4] To

---

[4] Allstate cites numerous cases for the proposition that temporary insurance coverage is by its very nature conditioned upon a showing that the applicant was both insurable and an acceptable risk when the application was made. We disagree. All of the cases cited by Allstate involve receipts or temporary agreements with language expressly requiring insurability, acceptability, or both as an enforceable condition precedent to coverage. *National Life & Accident Ins. Co. v. Blagg*, 438 S.W.2d 905, 907 (Tex. 1969) (insurance effective on date of deposit or medical examination provided that the "Proposed Insured . . . was insurable and acceptable"); *Carey*, 363 S.W.2d at 238 ("insurance effective on date of this receipt or date of completion of the medical examination . . . if in the opinion of the [insurer] . . . the Proposed Insured is insurable and acceptable for insurance"); *Harp v. Valley Forge*, 577 S.W.2d 746, 747 (Tex. Civ. App.--San Antonio 1979, writ dism'd) ("[i]f the company determines to its satisfaction that the proposed insured was insurable under the company's rules and standards, then the insurance shall take effect"); *Nims*, 512 S.W.2d at 714 ("the insurance applied for is effective from the date of application provided . . . that the applicant be a risk acceptable to the company"); *Robertson*, 483 S.W.2d at 390 (coverage to take effect on the latest of several dates "provided the following conditions precedent to coverage are met: (1) That on such date each person proposed for insurance is

10

the contrary, the structure of the agreement is such that temporary insurance does not terminate when Allstate determines not to accept the risk, unless Allstate provides written notice to the applicant. Moreover, the temporary insurance *does* terminate when Allstate decides to accept the risk by issuing permanent coverage.[5] Further, the terms of the agreement provide that the temporary insurance, which takes effect once the medical exam is completed, is supplanted by the permanent policy, which takes effect "as of its start date and not by" the terms of the temporary insurance agreement.  Based upon the plain language of the agreement, we cannot agree with the district court's finding that the temporary insurance agreement was a relation-back policy that did not provide coverage until Allstate approved the risk.  Indeed, the plain and unambiguous language of the agreement exhibits an intent to provide temporary or "gap" coverage during the period that Mr. Marriott's application was pending.

The agreement provides that "[i]f the answer to Question 25 in the application is 'Yes,' temporary insurance on each person named in Question 25 will start when all medical exams are completed for that person."  Allstate keys into the use of the plural form "exams" to argue that no contract of insurance arose under the agreement because it could have required additional examinations after reviewing the initial examination required by Question 25 of

insurable and acceptable for the plan and amount of the insurance applied for").  There is no such language in the subject agreement.

[5]     Thus, Allstate conditioned only the permanent, rather than the temporary, coverage upon insurability and acceptability.

the application. Although facially appealing, Allstate's argument fails when viewed in light of other contract provisions.

The provision stating when insurance will start refers to medical exams contemplated by Question 25 in the application. Similarly, the agreement provides that insurance will stop "the date we write to the Owner that a medical exam is required (other than any exams referred to in Question 25), in which event insurance will stop with respect only to the person(s) required to have a medical exam." Thus, the agreement requires that Allstate provide written notice that additional medical examinations are required. Until such notice is provided, the temporary coverage arising under the agreement continues. For that reason, Allstate's argument that it retained an unconditional right to consider asking for more medical exams, and that no insurance arose until it signaled its agreement to accept Mr. Marriott's application, must fail.

The district court also held that the agreement lacked a required element of mutuality because Allstate retained the unilateral right to terminate both the temporary insurance and the pending application for permanent coverage. We cannot agree. Both sides offered valuable consideration. Mr. Marriott paid an initial premium in exchange for Allstate's promise to provide temporary coverage when Mr. Marriott completed the medical examination. While it is true that Allstate retained the right to unilaterally terminate consideration of Mr. Marriott's application, the agreement required that Allstate provide notice that it intended to

12

exercise that option. Texas law does not require that every right or obligation by one party be met with an identical right or obligation in the other. *Howell v. Murray Mortgage. Co.*, 890 S.W.2d 78, 87 (Tex. App.--Amarillo 1994, writ denied) ("Generally there is mutuality in the case of mutual promises by both parties to the contract which furnish a consideration each for the other, or where both parties undertake to do something -- even though every obligation of one party is not met by an equivalent counter obligation of the other."). Moreover, Allstate's right to void coverage at its option did not render the contract void or unenforceable when Allstate did not, in fact, exercise that option, but instead embarked upon performance by considering Mr. Marriott's application.

Mr. Marriott applied for binding temporary coverage that was not conditioned upon Allstate's acceptance of his application. Absent some other policy defense, the terms of the policy require the conclusion that the temporary coverage arose when Mr. Marriott completed the medical examination on July 26, 1994 as required by the application.

### III.

### Temporary Insurance Was Not Terminated

Moreover, none of the six conditions that could have terminated the temporary coverage occurred. Allstate did not provide notice one way or the other regarding its decision on Mr. Marriott's application for permanent insurance. Allstate did not notify Mr. Marriott that it was going to require additional medical

13

examinations.  Finally, the sixty-day time period during which the agreement could remain valid did not expire.  Thus, none of the conditions which are defined in the agreement as capable of terminating coverage occurred.  Allstate's obligation under the temporary agreement arose on July 26, 1994 and, absent some other factor, was in effect at the time of Mr. Marriott's death.

## IV.

### Allstate's Attempt to Condition Coverage upon Truthful Application Answers was Ineffective as a Matter of Law

Allstate attempts to avoid the conclusion that it must pay benefits under the temporary insurance agreement by arguing that no contract was formed because truthful application answers were a condition precedent to coverage.  Thus, Allstate maintains that Mr. Marriott's alleged misrepresentations preceded and avoided the formation of any contract.

Reading the agreement leaves no doubt that Allstate intended to condition coverage upon truthful answers in the separate application.  The agreement specifies that "no insurance will start if the application contains fraud or misrepresentation that is material to the underwriter's acceptance of the risk."  The plain language of the agreement supports Allstate's position that no contract was formed.  That position is defeated, however, by Texas statutory and common law limiting the effect that untruthful answers in a life insurance application can have on coverage.

Under Texas law, the responses given in a life insurance application are mere representations, rather than warranties that

14

would be capable of making coverage void or voidable.[6]  Short of

inserting an unambiguous "good health warranty" demonstrating that

the parties intended the contract to rise or fall on the literal

truth of an insured's general certification of good health,[7] Texas

has not allowed an insurer to change that result by contracting to

make truthful application answers a condition precedent to

coverage.  *See* **Mayes**, 608 S.W.2d at 616; **Cartusciello**, 661 S.W.2d

at 286-88; *see also* 48 TEX. JUR. 3D *Insurance Contracts and Coverage*

§§ 544-45 (1995).  Rather, article 21.16 and article 21.35 of the

Texas Insurance Code prescribe the effect that untruthful answers

in an application can have on coverage.  Article 21.16 provides

---

[6]  **Mayes**, 608 S.W.2d at 616 (reversing Court of Appeals' conclusion that truthful application answers were a condition precedent to coverage and holding that application answers are mere representations subject to the elements of a misrepresentation defense); **American Nat'l Ins. Co. v. Paul**, 927 S.W.2d 239, 243 (Tex. App.--Austin 1996, writ denied) ("Where the language of the policy expressly provides that coverage does not take effect unless the applicant is in good health, the good health provision is enforceable as a condition precedent. . . . However, where the language in the policy states that the answers in the application are true and correct at the time of delivery of the policy, such a requirement is merely a representation."); **Cartusciello v. Allied Life Ins. Co.**, 661 S.W.2d 285, 286-88 (Tex. App.--Houston [1st Dist.] 1983, no writ) (rejecting insurer's argument that misrepresentation in the application operated as a condition precedent to coverage and subjecting the insurer's argument to the ordinary elements of an affirmative defense for misrepresentation).

[7]  In an insurance contract, a warranty is a statement made by the insured, which is susceptible to no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true.  **Lane v. Travelers Indem. Co.**, 391 S.W.2d 399, 402 (Tex. 1965).  Warranties in insurance applications are strongly disfavored in the law, and even fairly obvious attempts to create warranties in the application process have been rejected by Texas courts. *See, e.g.*, **Cartusciello**, 661 S.W.2d at 287; **Allied Bankers Life Ins. Co. v. De La Cerda**, 584 S.W.2d 529, 532 (Tex. App.--Amarillo 1979, writ ref'd n.r.e.).

that a provision making coverage void or voidable based upon misrepresentation in an insurance application is of no effect. TEX. INS. CODE art. 21.16 (Vernon 1981). An insured's misrepresentation in an application is, of course, a serious matter. But the insurer's remedy is limited to an affirmative policy defense, which is available only when the representation is material and the application is attached to the contract or policy of insurance. *Id.*; TEX. INS. CODE art. 21.35 (Vernon Supp. 1998).

Allstate does not cite any Texas authority to the contrary. Instead, Allstate relies primarily upon *Gladney v. Paul Revere Life Ins. Co.*, 895 S.W.2d 238 (5th Cir. 1990) for the premise that an insurer may place conditions precedent in a temporary insurance agreement. Our decision is not in conflict with that modest premise. We agree that a Texas insurer may impose many different types of conditions precedent upon both temporary and permanent coverage. *See, e.g.*, *Mayes*, 608 S.W.2d at 616 (recognizing the enforceability of a good health warranty); *Blagg*, 438 S.W.2d at 907; *Carey*, 363 S.W.2d at 238; *Harp*, 577 S.W.2d at 747; *Nims*, 512 S.W.2d at 714; *Robertson*, 483 S.W.2d at 390 (all recognizing the enforceability of a condition precedent requiring insurability, acceptability, or both).

More importantly, *Gladney* is a diversity case applying Mississippi law. The rule limiting the effect of a provision conditioning life insurance coverage upon truthful application answers is a creature of Texas law. Regardless of what Mississippi is willing to tolerate, Texas law forbids our giving effect to a

16

provision making truthful application answers a condition precedent to temporary life insurance coverage. Thus, the provision identified by Allstate is insufficient to defeat contract formation.

V.

### Allstate is Precluded from Relying upon Representations in Mr. Marriott's Application to Avoid Coverage

Allstate may still assert an affirmative defense based upon Mr. Marriott's misrepresentations, if any, in the application process. That defense is qualified, however, by the statutory rule that statements made in a life insurance application are not admissible to establish a misrepresentation unless the application is attached to and made part of the insurance policy. *See Fredonia*, 881 S.W.2d 279 (applying TEX. INS. CODE art. 21.35); *National Lloyds Ins. Co. v. McCasland*, 566 S.W.2d 565, 566 (Tex. 1978) (failure to comply with article 21.35 "renders evidence of representations made in applying for insurance inadmissible into evidence"); *Johnson v. Prudential Ins. Co.*, 519 S.W.2d 111, 114 (Tex. 1975) ("Article 21.35 . . . has been repeatedly applied to prevent the use of statements of the insured which were not attached to the policy").

Allstate maintains that article 21.35 does not apply to contracts providing temporary insurance. Having already concluded that the temporary insurance agreement issued in this case was a "contract of insurance" under Texas law, we have no difficulty finding that the Texas legislature intended to include contracts

17

affording temporary coverage within the realm of article 21.35.

Nothing in the plain language of article 21.35 excludes an agreement to provide temporary coverage from the scope of that article. To the contrary, the article provides that it applies to "every contract or policy of life insurance." We are persuaded, both by the Texas legislature's direct command to include "every" contract, and the legislature's attempt to distinguish between a "contract" and a "policy," that there is no principled basis for excluding contracts providing insurance for a limited period of time from the scope of article 21.35. For that reason, Allstate cannot avoid liability under the contract by claiming that the temporary insurance agreement was outside the scope of article 21.35.

We are also persuaded by the fact that the purpose of the statute is well served in this context. The purpose of the requirement embodied in article 21.35 is to provide a life insurance applicant with the opportunity to review and reconsider the answers provided in the application during his or her lifetime. *Mayes*, 608 S.W.2d at 283. The record establishes that Mr. Marriott was severely compromised by the painkillers in his system. The Allstate agent was informed of Mr. Marriott's condition. Indeed, the record conclusively establishes that the Allstate agent filled out Mr. Marriott's premium check and strongly suggests that the agent also completed the lengthy and fact-intensive application form. Surely, leaving Mr. Marriott a copy of the completed application responses would have afforded him an opportunity to

18

review his responses when he was unaffected by disabling pain medication.  If that opportunity were provided, it is possible that Mr. Marriott would have corrected any misstatements concerning his medical condition.

Allstate warns that including temporary insurance agreements within that group of contracts subject to article 21.35 will render insurers unable to protect themselves from uninsurable risks.  We disagree.  First of all, Allstate could have made insurability or acceptability a condition precedent to coverage under the temporary insurance agreement.  It did not do so.  Moreover, Allstate could have protected itself from the effect of any misrepresentations by simply attaching a copy of the Mr. Marriott's application to the temporary insurance agreement.  Once again, Allstate did not do so.  Our holding is not that Allstate cannot protect itself from uninsurable risks, but that it failed to take those precautions in this case.

Allstate contends that it could not have attached the application because Part 2 (recording the medical examination) was not completed until July 26, almost one month after the temporary insurance agreement issued.  We disagree.  Mr. Marriott's answers to the key medical questions could have been left with Mr. Marriott on the evening he completed the application that was submitted to Allstate.  Creating the application form in multiple parts to facilitate this procedure does not seem unduly burdensome. Allstate's argument is also self-defeating.  Allstate could have provided Mr. Marriott with a copy of the application and temporary

19

insurance agreement at the time of or immediately after the medical examination was completed. Allstate chose not to pursue this course of action either. Instead, the record supports the conclusion that Allstate did not provide either Mr. Marriott or his beneficiaries with a copy of Mr. Marriott's application until more than four months after his initial application, more than three months after his medical examination and subsequent death, and almost two months after the death claim was filed with Allstate. Even then, Allstate apparently ignored several requests for the document before tendering it to Mr. Marriott's beneficiaries.

Allstate's failure to attach the application, or to provide copies of the application together with the temporary insurance agreement within a reasonable time frame, means that Allstate cannot rely upon Mr. Marriott's representations in the application to avoid coverage. For that reason, whether Mr. Marriott misrepresented his medical history, whether Mr. Marriott intended to deceive Allstate, whether Mr. Marriott's misrepresentations would have been material to the risk assumed by Allstate, and other similar issues argued by the parties are immaterial. Stated simply, Mr. Marriott's misrepresentations, if any, in the application are inadmissible to assist Allstate's efforts to defeat coverage.

A grave danger in insurance cases, particularly when we are exercising our diversity jurisdiction, is that a particular holding will be read too broadly. Both sides of this dispute have cited cases to this Court for general propositions that fall apart once

20

the specific language of the agreement in the cited case is compared with the specific language at issue in this case. Let there be no confusion. We are not purporting to define the precise language required to create an insurance contract. Neither do we establish any new or general rule that temporary insurance agreements, conditional receipts or binders do or do not create enforceable insurance contracts under Texas law. Rather, our conclusion that the temporary insurance agreement issued to Mr. Marriott was a "contract of insurance" subject to the requirements of article 21.35 is necessarily dependent upon the facts of this case. We do nothing more than interpret the agreement between these parties.

## CONCLUSION

The temporary insurance agreement furnished to Mr. Marriott at the time he applied for life insurance with Allstate was a binding contract for temporary insurance coverage pending approval of his application with Allstate. Coverage began when Mr. Marriott completed the medical examination required by the application and was not terminated by the occurrence of any condition specified in the contract. Allstate's attempt to make truthful application answers a condition precedent to coverage is inconsistent with Texas law defining an insurer's qualified right to avoid coverage on the basis of an applicant's untruthful representations in a life insurance application.

Article 21.35 precludes an insurer from relying upon

21

representations in a life insurance application unless a copy of the application is attached to and made part of the contract or policy of insurance.  Allstate failed to leave Mr. Marriott with a copy of his application, either at the time of application or at the time that coverage became effective.  Allstate's failure to comply with the relevant statutory provision renders any evidence that Mr. Marriott made misrepresentations in his application inadmissible and precludes Allstate's misrepresentation defense as a matter of law.  Having advanced no other defense to liability, Allstate is obligated to provide benefits to Mr. Marriott's beneficiaries.

For the foregoing reasons, the district court's entry of summary judgment in favor of Allstate was improper, and Riner and Marriott are entitled to summary judgment on the issue of coverage. Although Riner and Marriott moved for summary judgment on the issue of Allstate's "liability," our holding cannot sweep so broadly. Riner and Marriott's claims for violation of the Texas Insurance Code and the Texas Deceptive Trade Practices Act and for violation of the common-law duty of good faith and fair dealing all involve some conduct on the part of the insurer that is in addition to and independent of the insurer's obligation to pay proceeds under the contract of insurance.[8]  With respect to these claims, the summary

---

[8]     For example, Riner and Marriott's claim under the Texas Deceptive Trade Practices Act alleges that Allstate "knowingly" engaged in a deceptive act or practice.  Riner and Marriott's claim under the Texas Insurance Code alleges that Allstate made misrepresentations of its own and unreasonably refused to pay benefits.   Riner and Marriott's claim for breach of the duty of good faith and fair dealing requires a showing that Allstate

judgment record is insufficiently developed to justify a rendition of summary judgment in favor of Riner and Marriott on the issue of "liability." We must therefore remand the case for further development of the issues material to a determination of Allstate's liability on these claims.

Riner and Marriott also pleaded that Allstate's failure to pay benefits under the temporary insurance agreement was a breach of contract. With respect to that claim, our conclusion that Allstate is obligated to pay Riner and Marriott at least the $100,000 proceeds of the temporary insurance agreement is sufficient to support our rendition of judgment in favor of Riner and Marriott.

Accordingly, the district court's grant of summary judgment in favor of Allstate is REVERSED.

Judgment is RENDERED in favor of appellants Riner and Marriott on the issue of Allstate's obligation to provide coverage and benefits under the temporary insurance agreement and on the issue of Allstate's liability to Riner and Marriott for breach of contract.

The cause is REMANDED for further development of additional liability issues relating to Riner and Marriott's remaining claims for breach of the duty of good faith and fair dealing and for violations of the temporary insurance agreement and the Texas Deceptive Trade Practices Act, and for a determination of damages in addition to the $100,000 face amount of the temporary insurance

_____

unreasonably failed to investigate or settle Riner and Marriott's claim.

23

agreement.