# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-11059

United States Court of Appeals
Fifth Circuit

**FILED**
April 8, 2015

Lyle W. Cayce
Clerk

JACK SONG; NAMMI SONG,

   Plaintiffs - Appellants

v.

4170 & 4231 & 4271 ALTOONA DRIVE HOLDINGS LIMITED
PARTNERSHIP,

   Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:13-CV-1822

Before STEWART, Chief Judge, and KING and ELROD, Circuit Judges.

PER CURIAM:*

   Plaintiffs-Appellants Jack and Nammi Song appeal the district court's order granting summary judgment in favor of Defendant-Appellee 4170 & 4231 & 4271 Altoona Drive Holdings Limited Partnership. The Songs seek the reversal of the district court's judgment, which declared that Altoona was entitled to the $361,200 deposit made by the Songs arising from an auction for

---

   * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the sale of an apartment complex.  The Songs argue that the parties entered into a revocable option contract, unsupported by consideration, for the sale of the apartment complex.  Therefore, the Songs argue that even though they revoked their offer on the property, Altoona is not entitled to retain the $361,200 deposit.  Because we hold that the agreement became a binding contract, supported by consideration, before the Songs attempted to revoke their offer, we AFFIRM the district court's entry of summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs-Appellants Jack and Nammi Song submitted the winning bid, in the amount of $3,440,000, during an online auction for the purchase of the an apartment complex located at 4170, 4231, and 4271 Altoona Drive, Dallas, Texas (the "Property").  On February 27, 2013, the Songs executed a Purchase and Sale Agreement (the "Agreement"), which initially constituted a bid that was to remain open for fifteen business days.  On the same day, the Songs wired $361,200 as an earnest money deposit for the Property.  The Agreement stated, under the heading "Acknowledgment of Offeror," that "a binding contract between the undersigned and Seller will not be created unless and until Seller indicates its acceptance of this bid by executing the attached Purchase and Sale Agreement and by delivering a copy thereof to the undersigned."  On February 28, 2013, a representative of 4170 & 4231 & 4271 Altoona Drive Holdings Limited Partnership ("Altoona") executed the Agreement and delivered a copy to the Songs.

Section 12.20 of the Agreement, "<u>Auction Sale/Process</u>," contains the following language:

> Seller may select the winning bid in its sole and absolute discretion.  No obligation to sell shall be binding on Seller unless and until this Agreement is countersigned by Seller and, if the sale is subject to confirmation as evidenced by an Addendum to Purchase and Sale Agreement "Subject To" executed by Seller and

2

No. 14-11059

> Purchaser, Seller has delivered its approval of the sale as required in said addendum. Seller may rescind any oral acceptance of a winning bid prior to the execution and delivery of this Agreement to Purchaser for any reason . . . ."

The Songs and Altoona executed the Addendum to the Purchase and Sale Agreement "Subject To" (the "Addendum"). The Addendum included a provision that allowed Altoona to "terminate the Agreement, in [Altoona's] sole and absolute discretion, in the event [Altoona] does not approve the sale." The Addendum further provided that Altoona "shall make such election within fifteen . . . business days . . . following the Effective Date of the Agreement," and if Altoona "elects NOT to approve the transaction and elects to reject the Agreement" the Songs were entitled to a refund of their deposit. In the event that the Song's defaulted on their obligations under the Agreement, Section 10.2 entitles Altoona to retain the Songs' deposit as liquidated damages.

On March 5, 2013, the Songs informed Altoona that they would not complete the purchase of the Property and demanded the return of their deposit. On March 21, 2013, Altoona delivered a letter to the Songs confirming that Altoona approved the sale of the Property and that the closing date would be April 11, 2013. The Songs refused to close on the Property on April 11, 2013.

On April 16, 2013, the Songs filed suit against Altoona in the 134th District Court, Dallas County, Texas, seeking both a declaratory judgment establishing that they had the right to revoke their offer to purchase the Property and recovery of their deposit. Altoona removed the case to the United States District Court for the Northern District of Texas and filed a counterclaim for breach of contract. On April 22, 2014, the district court entered an order granting summary judgment for Altoona. After their motion for reconsideration was denied by the district court, the Songs filed a timely notice of appeal.

3

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same standard that was applied below. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The interpretation of a contract . . . is a question of law, which we review *de novo.*" *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013).

## DISCUSSION

Under Texas law, a valid contract consists of the following six elements:

> (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) meeting of the minds, (4) a communication that each party consented to the terms of the contract, (5) execution and delivery of the contract with intent it become mutual and binding on both parties, and (6) consideration.

*Expro Ams., LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 920 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). At issue here are the second and sixth elements. The Songs argue that the Agreement is a revocable option contract unsupported by independent consideration. However, the language of the Agreement forecloses such an interpretation.

The Agreement is fulsome and explicit. It establishes "that a binding contract between the [Songs] and [Altoona] will not be created unless and until [Altoona] indicates its acceptance of this bid by executing the attached [Agreement] and delivering a copy thereof to the [Songs]." A representative executed and delivered a copy of the Agreement to the Songs on February 28, 2013. A binding contract was thereby created. Further, the language of the Addendum makes clear that Altoona can "terminate" the Agreement during the fifteen day period following the effective date of the Agreement. If, as

argued by the Songs, the Agreement allows them as a matter of law—albeit not explicitly spelled out in the Agreement—to withdraw their offer at any time during that period, the Agreement's provision of those fifteen days for Altoona to "approve the sale" would be illusory because the Songs could opt out at any time. We hesitate to construe the Agreement as a matter of law in a way that renders an explicit provision of the Agreement illusory.

Making another run at it, the Songs argue that section 12.20 of the Agreement establishes a second condition precedent to the formation of a binding contract—namely, Altoona's delivery of a separate written approval of the sale. However, section 12.20 only deals with Altoona's "obligation to sell" the Property. It does not address, and therefore does not modify, the Songs' obligation to hold their bid open for the fifteen days contemplated by the Addendum. Further, it does not address the parties' power of acceptance, which is explicitly covered in the Agreement itself. Therefore, once Altoona executed the Agreement and delivered it to the Songs on February 28, 2013, all of the covenants under the contract became binding by the explicit terms of the Agreement. *See Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 26 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("To form a binding contract, the party to whom the offer is made must accept such offer and communicate such acceptance to the person making the offer.").

Furthermore, the Agreement is supported by consideration. "It is quite elementary that the promise of one party is a valid consideration for the promise of the other party." *Tex. Farm Bureau Cotton Ass'n v. Stoval*, 253 S.W. 1101, 1105 (Tex. 1923). In exchange for the Songs' promise to allow Altoona to "terminate the Agreement, in [Altoona's] sole and absolute discretion, in the event [Altoona] does not approve the sale," Altoona promised to accept the highest bid submitted during the auction, which was the Songs' bid. Altoona's acceptance of the Songs' bid was sufficient consideration to support the

existence of a valid contract. *Cf. Sedona Contracting, Inc. v. Ford, Powell & Carson, Inc.*, 995 S.W.2d 192, 197 n.1 (Tex. App.—San Antonio 1999, pet. denied) ("We agree . . . that consideration was given when the NEISD accepted Sedona's bid for consideration and evaluation.").[1]  Altoona also promised to keep the Property insured against fire and other hazards and to maintain the Property in good condition while the Agreement was in force.  These promises provided additional consideration for the Agreement.  *See Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 670 (Tex. App.—Fort Worth 2010, no pet.) ("[V]aluable and sufficient consideration for a contract may consist of . . . a loss or detriment to the promisee.").  As such, even if Altoona had ultimately terminated the Agreement, Altoona would have been bound in the interim—bound to accept the Songs' bid (as the highest), bound to insure the Property, and bound to maintain the Property.  While these obligations may not be commensurate to the Songs' obligation to purchase the Property, "Texas law does not require that every right or obligation by one party be met with an identical right or obligation in the other." *Riner*, 131 F.3d at 536 (citing *Howell v. Murray Mortg. Co.*, 890 S.W.2d 78, 87 (Tex. App.—Amarillo 1994, writ denied)).

The Songs' citation to *Hott v. Pearcy/Christon, Inc.*, 663 S.W.2d 851 (Tex. App.—Dallas 1983, writ ref'd n.r.e.), does not change our conclusion.  There, the court examined a purported contract for the sale of property with a provision that limited the buyer's "liability under the contract to the forfeiture of his earnest money." *Id.* at 853.  The court explained that "[w]hile generally the mutual promise to buy and sell are sufficient to create a binding contract

---

[1] In any event, Altoona's right to terminate the Agreement "at its option did not render the contract void or unenforceable when [Altoona] did not, in fact, exercise that option, but instead embarked upon performance" by accepting the Songs' bid. *Cf. Riner v. Allstate Life Ins. Co.*, 131 F.3d 530, 536 (5th Cir. 1997).

to convey land, they are not sufficient when the buyer's liability is limited to forfeiture of his earnest money." *Id.* The court further explained that "[t]he effect of limiting liability results in an option to purchase, revocable at the will of the seller, unless and until an independent consideration is paid." *Id.* Here, as described above, there was consideration supporting the Agreement beyond the parties' mutual promises to buy and sell the Property. Therefore, even if we were to label the Agreement an option contract, it is supported by consideration and would still prevent the Songs' from revoking their bid during the fifteen day period contemplated by the Addendum. The Songs also cite to *Echols v. Bloom*, 485 S.W.2d 798 (Tex. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.); however, that case is inapposite. In *Echols*, the court confronted a situation where "the absence of consideration rendered the option unenforceable." *Id.* at 800. Here, there was consideration for the Agreement, which became a binding contract when it was executed and returned by Altoona on February 28, 2013.

Finally, we hold that the district court was correct when it found that Altoona was entitled to the Songs' deposit as liquidated damages. Under Texas law, "[a] liquidated damages stipulation is valid if it is reasonable and the actual damages are uncertain." *Enclave, Inc. v. Resolution Trust Corp.*, 986 F.2d 131, 134 (5th Cir. 1993) (citing *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952)). In fact, "[it] has been held, time and again, that a provision for liquidated damages in a contract for the sale and purchase of real estate is proper as being a transaction in which the damages for the breach thereof are uncertain and not easily estimated with accuracy." *Id.* (quoting *Zucht v. Stewart Title Guar. Co.*, 207 S.W.2d 414, 419 (Tex. Civ. App.—San Antonio 1947, writ dism'd)). We conclude that the liquidated damages provision is reasonable and actual damages were uncertain. Accordingly, because the Songs breached the agreement by refusing to close on the Property, the district

No. 14-11059

court correctly held that Altoona is entitled to the deposit as liquidated damages.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.